UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| ADMINISTRATORS OF THE TULANE EDUCATIONAL FUND, ET AL. | * * * | CIVIL ACTION NO. 16-13987 |
| | * | SECTION: "E"(1) |
| VERSUS | * | |
| | * | JUDGE SUSIE MORGAN |
| CYTOGEL PHARMA, LLC | * | |
| | * | MAGISTRATE JUDGE |
| | * | JANIS VAN MEERVELD |
| ************************************** | * | |

ORDER AND REASONS

Before the Court is the Motion to Compel filed by Cytogel Pharma, LLC ("Cytogel") (Rec. Doc. 152). For the following reasons, the Motion to Compel is GRANTED in part and DENIED in part.

Background

This lawsuit concerns the ownership of patent rights in certain opioid substitutes. During the relevant period, Dr. James E. Zadina ("Dr. Zadina") and Dr. Lazlo Hackler[1] ("Dr. Hackler") were employed jointly by Tulane University (plaintiff in this lawsuit as the corporate entity The Administrators of the Tulane Educational Fund ("Tulane")) and the Department of Veterans Affairs ("VA") and were engaged in developing new compounds that would reduce the side effects associated with opioids. In the 1990s, Dr. Zadina, Dr. Hackler, and Dr. Abba J. Kastin of Tulane developed a group of cyclic peptide-based opioid compounds ("1st Generation Compounds"), for which two patents were ultimately issued ("1st Generation Patents"). Pursuant to a 2003 agreement, Tulane has the sole right to license patents and patent applications it owns jointly with the VA. In that same year, Cytogel and Tulane entered into a license agreement for the 1st Generation Patents. After this agreement was executed, Dr. Zadina advised Cytogel regarding the properties and

---
[1] Dr. Hackler died in 2013.

1

characteristics of the 1st Generation Compounds, at first pursuant to an oral agreement, and starting in 2007, pursuant to a written consultancy agreement. This work was performed outside of Dr. Zadina's normal duties for the VA and Tulane. Tulane insists that Dr. Zadina's consultancy never involved work with any opioids other than the 1st Generation Compounds.

Tulane alleges that Dr. Zadina and Dr. Hackler continued researching peptide-based opioids for the VA and Tulane and eventually invented certain "2nd Generation Compounds," which offered reduced side effects and improved solubility relative to the 1st Generation Compounds. Tulane filed a provisional patent application for the 2nd Generation Compounds. After Tulane informed Cytogel of the application, Cytogel asserted that it owned the new application. Cytogel alleges that the 2nd Generation Compounds were developed by Dr. Zadina using confidential Cytogel information. The dispute continued, and eventually Dr. Zadina terminated his consulting agreement in 2013. Tulane's provisional application resulted in the issuance of U.S. Patent No. 8,716,436 (the "'436 Patent").

On August 19, 2016, Tulane and the United States filed this lawsuit against Cytogel seeking a declaratory judgment that Plaintiffs are the sole owners of the '436 Patent and related patent applications and that Dr. Zadina and Dr. Hackler are the true inventors of the '436 Patent. Cytogel filed a counterclaim against Tulane, the United States, and Dr. Zadina, alleging that they misappropriated its trade secrets and confidential information. Cytogel seeks a declaratory judgment that it is the owner of the '436 Patent and also asserts claims for breach of contract, infringement of the 1st Generation Patents that had been licensed to Cytogel, misappropriation of trade secrets, and other state law claims.

Discovery Issue

The issue before the Court at this time[2] concerns a licensing agreement between Tulane and a non-party, Mirata Pharmaceuticals ("Mirata"), for the '436 Patent (the "License Agreement"). Before producing the License Agreement, Tulane seeks assurances from Cytogel that the non-party will not be joined to this lawsuit. Further, Tulane will only produce this licensing agreement to Cytogel if it is subject to the "Attorneys' Eyes Only" provisions of the joint Protective Order issued earlier in this case. That Protective Order was issued on November 9, 2017, and was submitted jointly by the parties who negotiated the terms between themselves, and with the assistance of the undersigned Magistrate Judge.

Law and Analysis

1. *Scope of Discovery*

The Federal Rules of Civil Procedure provide that "parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. Proc. 26(b)(1). Of note, with the 2015 amendment to Rule 26, it is now clear that "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable." Id. In assessing proportionality of discovery, the following should be considered: "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Id. The advisory committee comments to the 2015 amendment to Rule 26 make clear that the parties and the court have a collective responsibility to ensure that

---

[2] The Court notes that after Cytogel filed the present Motion to Compel, the Court ordered the parties to meet and confer and attempt to resolve the issues. Some issues were resolved—Tulane has now confirmed the identity of the non-party licensee and agreed that the License Agreement can be produced without the name of the licensee redacted. (Rec. Doc. 154). The remaining issues are addressed here.

discovery is proportional. The party claiming it would suffer an undue burden or expense is typically in the best position to explain why, while the party claiming the information sought is important to resolve the issues in the case should be able "to explain the ways in which the underlying information bears on the issues as that party understands them." Id. advisory committee comments to 2015 amendment. "The court's responsibility, using all the information provided by the parties, is to consider these and all the other factors in reaching a case-specific determination of the appropriate scope of discovery." Id.

Rule 26(c) provides that the Court "may, for good cause," protect a party from "undue burden or expense" by issuing an order "forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters." Fed. R. Civ. Proc. 26(c)(1)(D).

*2. Relevance of the License Agreement*

Cytogel argues that the License Agreement is relevant to both its counterclaims and Tulane's claims. It points out that Tulane seeks a determination of its ownership rights in the '436 Patent including a right to license it without interference from Cytogel. Complaint ¶ 69, Rec. Doc. 1. And Cytogel alleges that the Plaintiffs intend to create a new enterprise and enter into a license agreement to commercialize opioid compounds covered by the '436 Patent. Amended Counterclaims ¶¶ 112, 117, 133, Rec. Doc. 68. Cytogel adds that the License Agreement is relevant to its claim for damages.

Tulane argues that the License Agreement is not relevant because Tulane is not seeking damages in this lawsuit and it says the License Agreement is immaterial to a determination of its ownership of the '436 Patent. Tulane does not address Cytogel's argument that the License Agreement is relevant to Cytogel's counterclaims. Tulane argues that Cytogel is not entitled to

discover the License Agreement because its responses to Tulane's contention interrogatories "reveal that the License is not relevant in any way."

In reply, Cytogel points out that its initial disclosures reference "actual or potential terms of any license or other agreements" as relevant to the litigation. It adds that it amended its response to Tulane's Interrogatory No. 8 to match this disclosure. Further, Cytogel argues that Tulane cannot use Cytogel's interrogatory answers to limit proof. It insists that the Court did not intend to irrevocably lock the parties to their legal contentions as of the deadline set for responses to contention interrogatories. Cytogel also argues that Tulane and Dr. Zadina have not substantially completed their document production at this time. Cytogel seems to imply that, therefore, its responses to the contention interrogatories cannot be considered final at this time.

The Court finds that the allegations of Cytogel's counterclaims are sufficient to make the License Agreement relevant to those counterclaims. If Cytogel is correct that Dr. Zadina improperly used its confidential information to develop the opioid compounds covered by the '436 Patent and that Cytogel has some right to the '436 Patent, then the License Agreement is relevant to Cytogel's claim for damages. The Court adds that, besides the confidentiality issues addressed below, Tulane has not suggested that producing the License Agreement would be burdensome.

3. *Attorney's Eyes Only Designation of the License Agreement*

Tulane argues that the License Agreement may properly be designated as subject to the "Attorneys' Eyes Only" provisions of the Protective Order. The Protective Order allows designation of materials as "Attorneys' Eyes Only" if the producing party makes a good faith determination that:

> disclosure is likely to cause significant harm to an individual, business, or competitive position of the producing party, and includes a trade secret, non-public research, non-public price lists, licensing-related documentation, customer lists, sales information, highly sensitive financial documents, contracts or agreements,

5

> tax returns or other governmental filings including documents utilized in the preparation of such filings, funding documents, marketing plans, business or research development information, or other highly confidential commercial or personal information.

Rec. Doc. 115, at 3. Tulane points out that "licensing-related documentation" and "contracts or agreements" are contemplated by the plain terms of the Protective Order. Further, Tulane argues that because Cytogel and the licensee are competitors in the opioid pharmaceutical industry, it is especially important to limit disclosure to prevent Cytogel from obtaining access to "critical, trade secret business information" contained in the License Agreement. Tulane explains that "if Cytogel were to discover what the parties are actually willing to agree to by reviewing the executed License, it could use that knowledge to enhance its negotiating position in similar instances and strategically undercut either Tulane or the Licensee in the future." (Rec. Doc. 160, at 4). At oral argument, counsel for Tulane added that nearly every part of the 25 page License Agreement raises such confidentiality considerations other than some boilerplate provisions.

Cytogel responds that since objecting to the identification of the licensee because "the licensee has elected to maintain its business relationship confidential and Tulane is bound to do so," Tulane publicly announced the identity of the licensee in the "Tulane Immersion Day Agenda," posted online which lists "5:40 PM James (Jim) Zadina, PhD | Non-Addictive Opioids, Peptide Chemistry (Licensed to Mirata Pharmaceuticals)." (Rec. Doc. 152-5, at 1).[3] This same Agenda encourages participants to attend "so they can experience our most innovative science, services and opportunities through a series of short, dynamic presentations." Id. Cytogel notes that Tulane initially requested that the licensee's identity also be maintained "Attorneys' Eyes Only." Cytogel argues that Tulane cannot now argue that the rest of the License Agreement, except

---

[3] At oral argument, counsel for Tulane stated that this disclosure had been inadvertent.

for the now-publicly disclosed identity of the licensee, must be maintained "Attorneys' Eyes Only."

The Court finds that at least some parts of the License Agreement may be properly designated as subject to the Attorney's Eyes Only restriction on disclosure. Because Cytogel is a potential licensee in the marketplace, disclosure of the License Agreement to Cytogel employees and representatives could reveal terms that would give Cytogel a competitive advantage. The Court is reluctant, however, to accept at face value Tulane's insistence that nearly every provision of the License Agreement, described by counsel as being 25 pages long, contains the type of confidential information that must be kept from Cytogel as the licensee's competitor. The parties will proceed as follows. Tulane shall produce the License Agreement in its entirety, completely unredacted, to Cytogel subject to the Attorneys' Eyes Only protections of the Protective Order. It shall produce a second copy subject only to the Protected Information protections of the Protective Order, and that copy will contain redactions of all information that Tulane in good faith believes must be subject to the Attorneys' Eyes Only provisions of the Protective Order. If Cytogel's attorneys believe redacted portions of the License Agreement must be downgraded to Protected Information and unredacted or that the License Agreement should not be Protected Information at all, the parties can work to resolve their issues per the terms of the Protective Order and, if necessary, seek the Court's assistance in resolving the matter.

*4. Addition of Licensee as a Party*

Tulane argues that the documents disclosed subject to the Protective Order in this case can only be disclosed to authorized individuals. It insists that if Cytogel's attorneys disclosed the License Agreement to Cytogel in order to formulate claims against the licensee, Cytogel would be violating those non-disclosure provisions. Tulane submits that Cytogel has already threatened to

7

sue any licensee of the '436 Patent, and that it fears the License Agreement will be misused by Cytogel and its substance disclosed. Tulane suggests that, to the extent that the Protective Order needs clarification, the following provision should be added: "Any information designated as 'PROTECTED INFORMATION' or 'PROTECTED INFORMATION-ATTORNEYS' EYES ONLY' shall not be used by the other party for any purpose other than in connection with preparation of the parties' analysis of issues presented in this litigation and shall not be disclosed outside of this litigation."

Cytogel disagrees with Tulane's interpretation of the Protective Order. It argues that the Protective Order does not prevent it from using protected information as a basis to add new claims against existing parties or to add claims against new parties. It submits that the purpose of a protective order is to shield a party from annoyance, embarrassment, undue burden, or expense, and not to protect potentially liable parties from litigation. Cytogel argues that Tulane's suggested "clarification" reveals that the Protective Order does not say what Tulane wants the Protective Order to say. Cytogel argues that Tulane's proposed interpretation would prevent the full adjudication of issues here.

At oral argument, Tulane's counsel clarified that to the extent Cytogel can state a claim against the licensee without its attorneys disclosing Attorney's Eyes Only portions of the License Agreement to Cytogel, Tulane agrees that Cytogel would not be prevented from suing the licensee. In response to the Court's questions, Cytogel's counsel agreed that Cytogel might be able to state a claim against the licensee even without disclosure of the License Agreement, but indicated that counsel could not properly assess the claim without reviewing the License Agreement. Tulane also contests whether production of the License Agreement is ultimately inevitable, either now by Tulane, or later by Mirata, should Cytogel sue Mirata. Tulane argues that Mirata could possibly

8

get the case dismissed without producing the License Agreement on a Rule 12(b)(6) motion to dismiss for failure to state a claim.

The Court agrees with Tulane in part. The Protective Order prohibits Cytogel from disclosing any Protected Information to anyone except those individuals listed in the Protective Order. As long as Cytogel abides by the limits on disclosure, it can use the Protected Information in this litigation. Thus, information properly marked as "Attorneys' Eyes Only" cannot be shared by Cytogel's attorneys with Cytogel itself for the purpose of developing a claim. But that does not prevent Cytogel's attorneys from developing a claim using such information, as long as it follows the non-disclosure obligations of the Protective Order. There is no basis for prohibiting Cytogel from asserting a claim against the licensee, however. Accordingly, the Court will not order such a restriction. The Court also declines to modify the Protective Order at this time.

<u>Conclusion</u>

For the foregoing reasons, the Motion to Compel is GRANTED in part and DENIED in part. Tulane will produce the License Agreement to Cytogel in two forms. One copy will be produced in unredacted form and may, at this time be marked as Attorney's Eyes Only under the Protective Order. The other copy will be produced with those portions Tulane considers "Attorney's Eyes Only" redacted. This copy may be produced as Protected Information under the Protective Order. Tulane's request for a protective order beyond the limitations ordered herein is denied.

New Orleans, Louisiana, this 30th day of April, 2018.

                                                Janis van Meerveld
                                     United States Magistrate Judge