# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| THE UNITED STATES and | Civil Action No.: 2:16-cv-13987 |
| THE ADMINISTRATORS OF THE TULANE EDUCATIONAL FUND, | SECTION: E |
| | JUDGE: Hon. Susie Morgan |
| Plaintiffs-Counterclaim Defendants, | |
| | DIVISION: 1 |
| v. | |
| | MAG. Hon. Janis van Meerveld |
| CYTOGEL PHARMA, LLC, | |
| Defendant-Counterclaim Plaintiff, | |
| v. | |
| DR. JAMES E. ZADINA, | |
| Counterclaim Defendant. | |

**DR. ZADINA'S STATEMENT OF UNDISPUTED MATERIAL FACTS
IN SUPPORT OF DR. ZADINA'S MOTION FOR PARTIAL SUMMARY
JUDGMENT OF DEFENDANT'S SECOND AMENDED COUNTERCLAIMS,
REVISED AND REFILED PURSUANT TO DOCKET ENTRY 230**

Pursuant to the Court Order dated August 8, 2018, (Doc. 230), Dr. Zadina has prepared this Statement of Undisputed Material Facts in Support of Dr. Zadina's Motion for Partial Summary Judgment of Defendant's Second Amended Counterclaims, Revised and Refiled Pursuant to Docket Entry 230.

Paragraphs 1–3 of Dr. Zadina's statement of uncontested material facts (Doc. 223-4) are repeated in revised paragraphs 1–3, as shown below. Revised paragraphs 1-3 are updated to cite to the Declaration of Mr. Matthew De Preter on file at Docket Entry 223.

Revised paragraph 4 now cites to Exhibit A of the Supplemental Declaration of Mr. Matthew De Preter in Support of Dr. Zadina's Motion for Partial Summary Judgment of Defendant's Second Amended Counterclaims in View of Docket Entry 230.

In view of Docket Entry 230, paragraphs 5-8 of Dr. Zadina's statement of uncontested material facts (Doc. 223-4) were amended to add concise statements of fact. For this reason, paragraphs 5-8 (Doc. 223-4) are being refiled as revised paragraphs 5-13, as shown below. The excerpts of deposition testimony cited in support of revised paragraphs 5-13, are the same as the excerpts quoted in paragraphs 5-8 of Dr. Zadina's statement of uncontested material facts (Doc. 223-4).

Paragraph 9 (Doc 223-4) is being refiled in accord with Docket Entry 230 as separate and discrete numbered paragraphs of uncontested facts. No new information or new citations to the summary judgment evidence is added to prior paragraph 9's progeny of revised paragraphs 14-30.

Solely for the purposes of the accompanying motion, Dr. Zadina does not dispute the facts set forth herein, and Dr. Zadina expressly reserves the right to dispute any of the following facts in any context outside of the scope of the accompanying motion.

Accordingly, Dr. Zadina sets forth the following Statement of Undisputed Material Facts:

1.  Cytogel designated Dean Maglaris to testify pursuant to The Plaintiff the Administrators of the Tulane Educational Funds Notice of Deposition of Cytogel Pharma, LLC pursuant to Federal Rule of Civil Procedure 30(b)(6), dated May 30, 2018, on the following topic:

    > "How the Consulting Agreement provides Cytogel rights to any peptide –based opioids in the '436 patent and specifically which compounds are included in those rights."  (Doc. 223-8, p. 5, ¶15).

2.  Cytogel designated Dean Maglaris to testify pursuant to The Plaintiff the Administrators of the Tulane Educational Funds Notice of Deposition of Cytogel Pharma, LLC pursuant to Federal Rule of Civil Procedure 30(b)(6), dated May 30, 2018, on the following topic:

    > "Cytogel's understanding of the terms of the Consulting Agreement."  (Doc. 223-8, p. 7, ¶28).

3.  Cytogel designated Dean Maglaris to testify pursuant to The Plaintiff the Administrators of the Tulane Educational Funds Notice of Deposition of Cytogel Pharma, LLC pursuant to Federal Rule of Civil Procedure 30(b)(6), dated May 30, 2018, on the following topic:

    > "The services and assignments Cytogel requested that Dr. Zadina perform under the Consulting Agreement and the facts pertaining thereto."  (Doc. 223-8, p. 7, ¶29).

4.  Dr. Zadina terminated the Consulting Agreement in 2013. (Supplemental De Preter Decl., Ex. A).

5.  Due to the Consulting Agreement, Dr. Zadina could not work on other opiates or opioids.  (See the June 8, 2018 Federal Rule of Civil Procedure 30(b)(6) deposition of Mr. Dean Maglaris, Cytogel's Chief Executive Officer, where Cytogel testified:

    > Q. Could he work on other opioids?
    > A. I don't know, that's -- I can't answer that. I don't want to answer that right now.
    > Q. Why is that?
    > A. I have to think about the question some more.
    > Q. Okay.

> A. Would I -- as a general rule, I would say he couldn't work on other opiates or opioids, but he certainly couldn't work on any endomorphins or any endomorphin-based opioids for commercial application or for clinical application.
> Q. So that would include -- when you say endomorphins, that would include any of the cyclical, anything that's cyclical?
> A. Any structure that you could possibly deem of that's endomorphin-based, related, derived, would be a direct competitor and he is precluded from doing that. (Doc. 223-7, Tr. 106:7-107:3).)

6. Due to the Consulting Agreement, Dr Zadina could not work on any endomorphins or any endomorphin-based opioids, including any structure that could possibly be deemed endomorphin-based, related or derived from endomorphin, for commercial application or for clinical application. (See the June 8, 2018 Federal Rule of Civil Procedure 30(b)(6) deposition of Mr. Dean Maglaris, Cytogel's Chief Executive Officer, where Cytogel testified:

> Q. Could he work on other opioids?
> A. I don't know, that's -- I can't answer that. I don't want to answer that right now.
> Q. Why is that?
> A. I have to think about the question some more.
> Q. Okay.
> A. Would I -- as a general rule, I would say he couldn't work on other opiates or opioids, but he certainly couldn't work on any endomorphins or any endomorphin-based opioids for commercial application or for clinical application.
> Q. So that would include -- when you say endomorphins, that would include any of the cyclical, anything that's cyclical?
> A. Any structure that you could possibly deem of that's endomorphin-based, related, derived, would be a direct competitor and he is precluded from doing that. (Doc. 223-7, Tr. 106:7-107:3).)

7. Any work by Dr. Zadina on any endomorphins or any endomorphin-based opioids would be a direct competitor to Cytogel and Dr. Zadina is precluded from doing that due to the Consulting Agreement. (See the June 8, 2018 Federal Rule of Civil Procedure 30(b)(6) deposition of Mr. Dean Maglaris, Cytogel's Chief Executive Officer, where Cytogel testified:

> Q. Could he work on other opioids?

>A. I don't know, that's -- I can't answer that. I don't want to answer that right now.
>Q. Why is that?
>A. I have to think about the question some more.
>Q. Okay.
>A. Would I -- as a general rule, I would say he couldn't work on other opiates or opioids, but he certainly couldn't work on any endomorphins or any endomorphin-based opioids for commercial application or for clinical application.
>Q. So that would include -- when you say endomorphins, that would include any of the cyclical, anything that's cyclical?
>A. Any structure that you could possibly deem of that's endomorphin-based, related, derived, would be a direct competitor and he is precluded from doing that. (Doc. 223-7, Tr. 106:7-107:3).)

8.  Dean Maglaris told John Christie that Cytogel owned the technology of provisional patent application 61/363,039, which the '436 patent claims priority to, before Mr. Maglaris saw that provisional patent application. (See the June 8, 2018 Federal Rule of Civil Procedure 30(b)(6) deposition of Mr. Dean Maglaris, Cytogel's Chief Executive Officer, where Cytogel testified:

>Q. So you told John Christie that you owned it even before you even saw the provisional application?
>A. Yes.
>Q. What was your -- you didn't even know what it was exactly6? (sic)
>A. I knew exactly what it was.
>Q. Okay.
>A. A new family of peptides. Just what he said here, a new family of peptides based on the endomorphins.
>Q. That's all you need to know?
>A. That's all I need to know. (Doc. 223-7, Tr. 220:5-17).)

9.  Dean Maglaris knew that the technology of provisional patent application 61/363,039, which the '436 patent claims priority to, was a new family of peptides based on endomorphin and that is all he needed to know to know that Cytogel owned the technology of that provisional application. (See the June 8, 2018 Federal Rule of Civil Procedure 30(b)(6) deposition of Mr. Dean Maglaris, Cytogel's Chief Executive Officer, where Cytogel testified:

> Q. So you told John Christie that you owned it even before you even saw the provisional application?
> A. Yes.
> Q. What was your -- you didn't even know what it was exactly6? (sic)
> A. I knew exactly what it was.
> Q. Okay.
> A. A new family of peptides. Just what he said here, a new family of peptides based on the endomorphins.
> Q. That's all you need to know?
> A. That's all I need to know.  (Doc. 223-7, Tr. 220:5-17).)

10. According to Cytogel, Cytogel owns all of the compounds identified in the '436 patent because they are all endomorphin based, and that is all Cytogel needs to know to claim ownership.  (See the June 8, 2018 Federal Rule of Civil Procedure 30(b)(6) deposition of Mr. Dean Maglaris, Cytogel's Chief Executive Officer, where Cytogel testified:

> Q. Okay. So earlier you had mentioned you believe all of the compounds identified in the '436 patent are – belong to Cytogel, why is that?
> A. They're all endomorphin based.
> Q. That's it?
> A. That's all I need. (Doc. 223-7, Tr. 111:5-11).)

11. Dr. Zadina was a potential competitor to Cytogel.  (See the June 8, 2018 Federal Rule of Civil Procedure 30(b)(6) deposition of Mr. Dean Maglaris, Cytogel's Chief Executive Officer, where Cytogel testified:

> Q. You saw he was a potential competitor?
> A. In retrospect, yes.
> Q. Could he be -- was he allowed to be a competitor?
> MR. REUTER: I object to the form. You can answer.
> THE WITNESS: Absolutely not.
> EXAMINATION BY MR. OLSON:
> Q. Why is that?
> A. Because he was a collaborator by consulting agreement and as a representative of Tulane under the terms of our license agreement, he was a collaborator, not a competitor.
> Q. So he couldn't work for any other company?
> A. Not with an analog or product that was closely related to our product.  (Doc. 223-7, Tr. 105:11-106:6).)

12.    Because Dr. Zadina collaborated with Cytogel through the Consulting Agreement, Dr. Zadina was absolutely not allowed to be a competitor of Cytogel.  (See the June 8, 2018 Federal Rule of Civil Procedure 30(b)(6) deposition of Mr. Dean Maglaris, Cytogel's Chief Executive Officer, where Cytogel testified:

> Q. You saw he was a potential competitor?
> A. In retrospect, yes.
> Q. Could he be -- was he allowed to be a competitor?
> MR. REUTER: I object to the form. You can answer.
> THE WITNESS: Absolutely not.
> EXAMINATION BY MR. OLSON:
> Q. Why is that?
> A. Because he was a collaborator by consulting agreement and as a representative of Tulane under the terms of our license agreement, he was a collaborator, not a competitor.
> Q. So he couldn't work for any other company?
> A. Not with an analog or product that was closely related to our product.  (Doc. 223-7, Tr. 105:11-106:6).)

13.    Because Dr. Zadina collaborated with Cytogel through the Consulting Agreement, Dr. Zadina could not work for any other company with an analog or product that was closely related to Cytogel's product.  (See the June 8, 2018 Federal Rule of Civil Procedure 30(b)(6) deposition of Mr. Dean Maglaris, Cytogel's Chief Executive Officer, where Cytogel testified:

> Q. You saw he was a potential competitor?
> A. In retrospect, yes.
> Q. Could he be -- was he allowed to be a competitor?
> MR. REUTER: I object to the form. You can answer.
> THE WITNESS: Absolutely not.
> EXAMINATION BY MR. OLSON:
> Q. Why is that?
> A. Because he was a collaborator by consulting agreement and as a representative of Tulane under the terms of our license agreement, he was a collaborator, not a competitor.
> Q. So he couldn't work for any other company?
> A. Not with an analog or product that was closely related to our product.  (Doc. 223-7, Tr. 105:11-106:6).)

14. Cytogel asserts that it is a breach of the Consulting Agreement for Dr. Zadina, for his own benefit and for the benefit of the other Counterclaim Defendants, to use Cytogel's highly confidential information to further his own secret work on the development of opioid compounds that are closely-related to Cytogel's opioid compounds that would compete directly with the product being developed by Cytogel. (Doc. 220, p. 5, ¶3).

15. Counterclaim-Defendant James E. Zadina, at all relevant times was a joint employee of Tulane and VA. (Doc. 220, p. 7, ¶10).

16. In the 1990s, Dr. Zadina and his colleagues at Tulane developed certain synthetic peptides that selectively stimulate the mu opioid receptor, and those peptides ("endomorphin analogs"), which are related to a natural peptide in humans called endomorphin-1 or EM-1, are not chemically related to opium poppy-derived drugs like morphine, and Dr. Zadina and Tulane obtained two patents, U.S. Patent Nos. 5,885,958 (the "'958 Patent") and 6,303,578 (the "'578 Patent"), on this technology in 1999 and 2001. (Doc. 220, p. 9, ¶16).

17. On December 1, 2003, Cytogel licensed the '958 and '578 Patents covering endomorphin peptides and their analogs from Tulane (the "2003 License"). (Doc. 220, p. 9, ¶17)

18. According to Cytogel, the provision in the Consulting Agreement that the activity by Dr. Zadina is not related to, or performed as part of, or during, Dr. Zadina's official duties at the Department of Veterans Affairs or Tulane University was critical for Cytogel precisely because Cytogel wanted to insure that Dr. Zadina was not developing a competing compound on behalf of Tulane or VA at the same time he was working with

Cytogel (Doc. 220, p. 11, ¶21)

19. From September 8, 2010 forward, Cytogel disengaged from Dr. Zadina. (Doc. 220, p. 20, ¶53),

20. On May 6, 2014, Dr. Zadina obtained U.S. Patent No. 8,7I6,436 B2 ("Mu Opioid Receptor Agonist Analogs of the Endomorphins"). (Doc. 220, p. 21, ¶57)

21. As a basis for its breach of contract claim, Cytogel complains that in 2016, Dr. Zadina published a paper including experimental data for EM-1 comparing it to the '436 compounds. Doc. 220, pp. 30-31, ¶¶ 66, 91.

22. As a basis for its breach of contract claim, Cytogel complains that, respecting the published a paper including experimental data for EM-1 comparing it to the '436 compounds, Dr. Zadina and Tulane have and will use these data, and other data collected via the use of Cytogel's exclusively licensed compounds, for the purpose of commercializing the compounds claimed in the '436 Patent. Doc. 220, pp. 23-24, ¶66, 91

23. Cytogel argues that it is clear from Dr. Zadina's consulting work with Cytogel that Cytogel gave Dr. Zadina a running start in developing a competing compound. Doc. 220, p. 24, ¶67

24. Cytogel asserts that was a breach of Dr. Zadina's Consulting Agreement to state in a published interview that he is in talks with several investors and biotech companies in order to "start their own company or ink a deal with a licensing partner" to commercialize the compounds covered by the '436 Patent and the Related Applications. (Doc. 220, p. 26, 31, ¶¶72, 91).

25. Cytogel asserts that that if the compounds covered by the '436 Patent and the Related Applications are commercialized, such compounds would directly compete with

9

Cytogel's Cyt-1010 in breach of the Consulting Agreement. (Doc. 220, p. 26, 31, ¶¶72, 91).

26. Cytogel asserts that by virtue of the Consulting Agreement, the all rights in '436 Patent and the Related Applications (the '057, '813, '249, and '259 Applications) are the property of Cytogel. (Doc. 220, p. 29, ¶81)

27. Cytogel contends that Tulane and the VA received a thing not owed to them because, under the terms of the Consulting Agreement, when future inventions came into existence, resulting in the '436 Patent and the Related Applications, the inventions immediately became the property of Cytogel pursuant to the terms of the Consulting Agreement. (Doc. 220, p. 39, ¶131)

28. Cytogel contents that Dr. Zadina, Tulane, and the VA violated LUTPA by purporting to assign Dr. Zadina's interest in the '436 Patent and the Related Applications, which in whole or in substantial part was based on information and disclosures from Cytogel, to Tulane while, on information and belief, they knew that interest was Cytogel's property under the terms of the Consulting Agreement. (Doc. 220, p. 41, ¶137)

29. As the basis for its tortious interference with business relations claim, Cytogel contends that Tulane and the VA induced Dr. Zadina to no longer deal with Cytogel and that inducement interfered with the business relationship Cytogel had with Dr. Zadina under the Consulting Agreement. (Doc. 220, p. 42, ¶142-143).

30. As the basis for its tortious interference with contracts claim, Cytogel contends that Tulane and VA intentionally interfered with the Consulting Agreement's contractual relationship between Cytogel and Dr. Zadina by causing Dr. Zadina to assign his interest in the '436 Patent and the Related Applications to Tulane and VA, in further breach of

Dr. Zadina's obligations under the Consulting Agreement. (Doc. 220, p. 46, ¶159).

Respectfully submitted

OLSON & CEPURITIS, LTD.

Dated: August 13, 2018  /s/ Arne M. Olson
Arne M. Olson (*admitted pro hac vice*) (T.A.)
Matthew De Preter (*admitted pro hac vice*)
20 N. Wacker Dr., 36th Floor
Chicago, IL 60606-3113
Tel.: 312-580-1180
Fax: 312-580-1189
aolson@olsonip.com
mdepreter@olsonip.com


/s/ Raymond G. Areaux
Raymond G. Areaux (LA 16792)
Carver Darden Koretzky Tessier Finn
Blossman & Areaux LLC
Energy Centre, Suite 3100
1100 Poydras Street
New Orleans, Louisiana 70163
Tel.: (504) 585.3800
Fax: (504) 585.3801
areaux@carverdarden.com

*Attorneys for Plaintiff-Counterclaim Defendant,
The Administrators of the Tulane Educational Fund
& Counterclaim-Defendant, Dr. Zadina*

## **CERTIFICATE OF SERVICE**

    I hereby certify that on this 13th day of August, 2018, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system of the Eastern District of Louisiana, which will send notice of electronic filing to counsel of record for all parties in this case.

                                      /s/ Arne M. Olson
                                        Arne M. Olson