UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| THE UNITED STATES and<br>THE ADMINISTRATORS OF THE<br>TULANE EDUCATIONAL FUND<br><br>Plaintiffs,<br><br>v.<br><br>CYTOGEL PHARMA, LLC,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>) Civil Action No. 2:16-cv-13987<br>)<br>) Section E<br>) Judge Susie Morgan<br>) |
| CYTOGEL PHARMA, LLC,<br><br>Counterclaim-Plaintiff<br><br>v.<br><br>JAMES E. ZADINA,<br>THE UNITED STATES, and<br>THE ADMINISTRATORS OF THE<br>TULANE EDUCATIONAL FUND<br><br>Counterclaim-Defendants | ) Division 1<br>) Magistrate Judge Janis van Meerveld<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM BY CYTOGEL PHARMA, LLC, IN OPPOSITION
TO DR. ZADINA'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Cytogel Pharma, LLC ("Cytogel"), files this memorandum in opposition to the Motion for

Partial Summary Judgment filed by James E. Zadina (Doc. 223).

**I.    Introduction**

This motion is baseless and must be denied for multiple reasons.  Although Dr. Zadina

began informally consulting with Cytogel in 2003 when Cytogel purchased the rights to various

compounds that he had invented, in 2006 he insisted on a formal consulting agreement that would

provide him with a monthly paycheck.  Dr. Zadina drafted such an agreement (with the assistance

and approval of Tulane and VA) and negotiated with Cytogel until final agreement was reached.

Now, after having enjoyed the benefits of this Consulting Agreement for years, Dr. Zadina seeks to nullify it by mischaracterizing it as an impermissible non-compete agreement.

That attempt utterly fails.  First, in arguing that the Consulting Agreement "restrains [him] from practicing his profession," Dr. Zadina liberally refers to irrelevant extrinsic evidence (mainly excerpts of pleadings and deposition testimony) to discuss how Cytogel supposedly "is trying to use" the Consulting Agreement while largely ignoring the terms of the actual agreement.  Doc. 223-3 at 7–8.  Ultimately, he relies on two specific provisions: a confidentiality provision in paragraph 7 requiring him to maintain the confidentiality of knowledge and information acquired from Cytogel, and an intellectual-property-transfer provision in paragraph 8 stating that Cytogel owns any intellectual property resulting or emerging from its materials and information or from the consulting process.  However, although Dr. Zadina never mentions it, Louisiana's non-competition law simply does not apply to confidentiality agreements or transfer provisions for intellectual property.  *NovelAire Techs., L.L.C. v. Harrison*, 2009-1372 (La. App. 4 Cir. 10/13/10), 50 So. 3d 913, 918–19.  Moreover, it is clear that neither of these provisions—or anything else in the Consulting Agreement—actually restrains Dr. Zadina from practicing him profession.

Second, even assuming that the contractual provisions at issue somehow restrain Dr. Zadina from practicing his profession (they do not), La. Rev. Stat. § 23:921 would still be inapplicable because the facts of this case are far removed from the intent and purpose of the statute—to "protect employees" with "uneven bargaining power."  *La. Smoked Products, Inc. v. Savoie's Sausage & Food Products, Inc.*, 696 So.2d 1373, 1381 (La. 1997).  Dr. Zadina not only requested the Consulting Agreement and drafted most of its provisions; he also filtered it through several layers of review, editing, and approval by both Tulane and VA (including by counsel) before he agreed to it.  And for years, Dr. Zadina, Tulane, and VA have reaped the benefits of the

agreement.  Because the terms of the Consulting Agreement have no "deleterious effect on the public" and do not "violate[ ] public policy," *id.*, La. Rev. Stat. § 23:921 does not apply.

Third, and in the alternative, Dr. Zadina's failure to acknowledge the thorny conflicts-of-law analysis underlying his motion provides another reason to deny his motion for summary judgment.  Fourth, even assuming Louisiana law applies and the Consulting Agreement contains a non-compete provision that violates La. Rev. Stat. § 23:921—and it does not—the law simply does not warrant the relief Dr. Zadina seeks, and such relief would in no way affect Cytogel's counterclaims.  This motion should be denied.

## II.    <u>Factual Background</u>

Dr. Zadina was a consultant for Cytogel from 2003 through 2013.[1]  In October 2006, Dr. Zadina requested a written consulting agreement by which Cytogel would pay him monthly for such work, in addition to any royalties Dr. Zadina was promised pursuant to other agreements with Tulane and VA.[2]   The parties spent months negotiating the provisions of the Consulting Agreement.[3]

Dr. Zadina wrote the first draft of the Consulting Agreement.[4] He also wrote or contributed to both paragraphs 7 (the confidentiality provision) and 8 (the IP transfer provision), which form the basis of his present motion.  These provisions were inserted to accommodate Cytogel's request for a confidentiality provision and an intellectual property provision.[5]   Zadina drafted the

---

[1] *See* Exhibit A, Excerpts from the Deposition of James E. Zadina ("Zadina Dep."), at 54:19–55:6.

[2] Zadina Dep. 83:2–5; Zadina Dep. Ex. 10.

[3] Zadina Dep. 68:19–22, 83:10–15.

[4] Zadina Dep. 84:17–22.

[5] *See, e.g.*, Exhibit C, Excerpts from the Deposition of C. Dean Maglaris ("Maglaris Dep.), at 301:16–18 (Paragraphs 7 and 8 were drafted to be "a confidentiality agreement provision and an intellectual property provision."); Maglaris Dep. Ex. 34 (April 12, 2007 email from Dr. Zadina to

confidentiality paragraph (Paragraph 7).[6]  The first sentence of Paragraph 8 is a nearly identical repeat of Paragraph 2, which Dr. Zadina also drafted.[7]  Cytogel provided the initial draft of the remainder of Paragraph 8, based on discussions with Dr. Zadina, and Tulane's Department of Technology Transfer implemented certain revisions to that paragraph (among others).[8]  Indeed, throughout the lengthy contractual negotiation process, Tulane and VA ████████████ reviewed various drafts of the Consulting Agreement and offered feedback and revisions.[9]  Further, before Dr. Zadina executed it, ████████ VA's Chief of Staff, and Tulane's Department of Technology Transfer all reviewed and approved the Consulting Agreement.[10]

The Consulting Agreement contains various paragraphs addressing issues such as compensation, confidentiality, and intellectual property.  Despite the lengthy process of revision and review, it does not contain any provision generally prohibiting Dr. Zadina from competing with Cytogel; indeed, it does not even use the words "compete" or "competition."[11]  In addition to the Consulting Agreement, Cytogel was also protected by the License Agreement,[12] which

---

Mr. Maglaris (Cyt00002887–90)); Exhibit D (April 20, 2007 email from Cytogel to Dr. Zadina (Cyt00003143–45)).

[6] *See* Zadina Dep. 84:17–22; Maglaris Dep. Ex. 34.

[7] Zadina Dep. 85:15–25 (noting the only modification to Dr. Zadina's draft of Paragraph 2 was the phrase, "at the present time").

[8] *See* Exhibit D; Exhibit B, Excerpts from the Deposition of John Christie ("Christie Dep."), at 47:11–23.

[9] Zadina Dep. 87:23–89:19, 91:25–93:24, 94:24–95:8.

[10] Zadina Dep. 94:24–95:8, 95:19–96:8, 96:5–8, 97:19–23; Zadina Dep. Ex. 16 (June 12, 2007 email from Mr. Christie to Dr. Zadina); Zadina Dep. Ex. 17 (June 12, 2007 email from Dr. Zadina to Mr. Maglaris); Zadina Dep. Ex. 18 (June 13, 2007 email from Dr. Zadina to Mr. Maglaris).

[11] Doc. 233-3.

[12] Dr. Zadina's motion for summary judgment (and statement of facts) repeatedly characterizes pages 106–07 of Mr. Maglaris's deposition as discussing the Consulting Agreement.  Dr. Zadina omits any discussion of the testimony from pages 105 and 107 that confirms Mr. Maglaris was

prohibited Dr. Zadina and Tulane from using the licensed compounds (including Cyt-1010) for commercial purposes.[13]  Yet, Dr. Zadina and Tulane used the licensed compounds for just such purposes when they developed the new Cyt-1010 analogs that they intended to commercialize and have in fact commercialized.[14]

Dr. Zadina, Tulane, and VA have reaped the benefits of the Consulting Agreement and License Agreement for years.  Pursuant to his consultancy with Cytogel, Dr. Zadina was a member of Cytogel's inner circle and afforded access to its most confidential information regarding the development of Cyt-1010.[15]  Tulane and VA were aware of Dr. Zadina's special role at Cytogel, including that he was a member of Cytogel's advisory board.[16]  Tulane and VA also were well aware of the constraints of the Consulting Agreement and the License Agreement, to which Tulane was a party.  Nonetheless, at the same time that he was working for Cytogel pursuant to the Consulting Agreement, Dr. Zadina, with Tulane's and VA's blessing, was secretly developing analogs of Cyt-1010 for clinical (and thus commercial) application.[17]  Dr. Zadina remained a Cytogel consultant until 2013, at which time he chose to terminate his consultancy.[18]  Dr. Zadina, Tulane, and VA continue to capitalize on the materials and information they received pursuant to

---

discussing the combined effects of the Consulting Agreement *and* the License Agreement.  *See* Maglaris Dep. 105:23–106:2; 107:5–6.  This distinction is critical to understanding Mr. Maglaris's testimony.

[13] *See* Exhibit E, License Agreement, ¶ 2.1.

[14] *See, e.g.*, Zadina Dep. 209:7–22, 232:23–233:3; Exhibit F, Excerpts from the Deposition of Dr. Zhang ("Zhang Dep."), 92:24–93:2.

[15] Maglaris Dep. 313:6–21, 314:21–25.

[16] Zadina Dep. 100:1–101:9.

[17] Zadina Dep. 194:17–21, 228:2–230:15.

[18] Zadina Dep. 68:23–24.

the Consulting Agreement and License Agreement,[19] even as Dr. Zadina (still a joint employee of

Tulane and VA) has breached the agreements and now seeks to eviscerate the protections that they

afforded Cytogel.

## III.   <u>Standard of Law</u>

As this Court has observed:

> Summary judgment is proper only if the movant shows that there is no genuine
> dispute as to any material fact and the movant is entitled to judgment as a matter of
> law.  An issue is material if its resolution could affect the outcome of the action.
> When assessing whether a material factual dispute exists, the Court considers all of
> the evidence in the record but refrains from making credibility determinations or
> weighing the evidence. All reasonable inferences are drawn in favor of the non-
> moving party.

*Page v. Dunn*, No. 16-3621, 2017 WL 5599512, at *2 (E.D. La. Nov. 21, 2017) (quotations and

modifications omitted).  "A genuine issue of material fact exists if the record, taken as a whole,

could lead a rational trier of fact to find for the non-moving party." *Tubos de Acero de Mexico,*

*S.A. v. Am. Int'l Inv. Corp.*, 292 F.3d 471, 478 (5th Cir. 2002).

Dr. Zadina bases his motion exclusively on La. Rev. Stat. § 23:921, which provides that,

subject to certain enumerated exceptions, "Every contract or agreement, or provision thereof, by

which anyone is restrained from exercising a lawful profession, trade, or business of any kind,

except as provided in this Section, shall be null and void."  In arguing that the Court should

invalidate the Consulting Agreement pursuant to La. Rev. Stat. § 23:921, Dr. Zadina faces the

burden of demonstrating that the terms of the Consulting Agreement restrained him from

practicing his profession.  He cannot rely on extrinsic evidence at this stage because "[w]here a

Court must consult extrinsic or parol evidence, questions of contract interpretation involve

questions of fact that preclude summary judgment." *Block One Marine, Inc. v. Basic Marine, Inc.*,

---

[19] Christie Dep. 276:25–277:2.

No. 08-4267, 2010 WL 1424410, at *2 (E.D. La. Apr. 6, 2010); *see also* La. Civ. Code art. 2046 ("When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent.").

Even if Dr. Zadina could show that the Consulting Agreement restrained him from practicing his profession (which he cannot), the application of § 23:921 requires that the statute's public policy justifications apply to the facts of this case. They do not, and this presents yet another reason to deny his motion for summary judgment. *See, e.g.*, *Sec. Alarm Fin. Enterprises, Inc. v. Green*, No. 05-0911, 2008 WL 2812959, at *7 (W.D. La. July 21, 2008) ("There is a genuine issue of material fact as to whether the parties were on equal footing which precludes summary judgment on that issue."); *Meadowcrest Ctr. v. Tenet Health Sys. Hosps., Inc.*, 05-12 (La. App. 5 Cir. 4/26/05), 902 So. 2d 512, 515 (affirming the denial of summary judgment where there was insufficient evidence of unequal bargaining power).

## IV.   La. Rev. Stat. § 23:921 does not apply to the Consulting Agreement because it does not prohibit Dr. Zadina from conducting a profession, business, or trade.

Dr. Zadina cannot rely on La. Rev. Stat. § 23:921 because it only applies to non-compete agreements—i.e., contracts or contractual provisions "by which anyone is restrained from exercising a lawful profession, trade, or business of any kind."  The statute does not apply to confidentiality provisions or intellectual property transfer provisions. *See Novelaire Techs., L.L.C. v. Harrison*, 08-157 (La. App. 5 Cir. 8/19/08), 994 So. 2d 57, 61 ("This agreement is not a non-competition agreement within the meaning of the statute. . . . [Defendant] is simply precluded under the contract from using any improvements or designs he made while working for the Plaintiff, and from disclosing or using the Plaintiff's confidential information for his own profit without consent of the Plaintiff.").

A.      **Paragraph 7 imposes a confidentiality obligation not subject to La. Rev. Stat. § 23:921.**

Dr. Zadina's arguments relative to Paragraph 7 hinge on a significant mischaracterization of its text.  According to Dr. Zadina, Paragraph 7 of "[t]he Consulting Agreement's language requires that Dr. Zadina only use his knowledge and information of opioids 'solely for the benefit of Cytogel.'"[20]  But this is not what the Consulting Agreement says.  To the contrary, Paragraph 7 provides:

> All knowledge and information that Consultant may acquire from Cytogel, its employees or other consultants, or on the premises of Cytogel, relating to any inventions, projects, programs, processes, methods, techniques, formulae, compounds, designs, improvements, refinements, plans, writings, tradenames, trademarks, copyrights, patents, trade secrets, business, operations, and other confidential or proprietary matters of Cytogel, shall be regarded by Consultant as strictly confidential and held by Consultant in trust solely for the benefit and use of Cytogel, and shall not be disclosed, directly or indirectly, by Consultant to any other person without the prior express written approval of Cytogel.[21]

On its face, this paragraph is a standard confidentiality clause that applies to knowledge and information that Dr. Zadina acquired from Cytogel (including from its employees or consultants) or on its premises.  Contrary to Dr. Zadina's arguments, this paragraph does not "prevent Dr. Zadina from working on opioids,"[22] provided that such work does not involve the illicit disclosure of Cytogel's information.  Dr. Zadina relies on *Arthur J. Gallagher & Co. v. Babcock* to argue that the Consulting Agreement includes a non-compete provision even though it contains no language

---

[20] Doc. 233-2, p. 8 (citing Doc. 223-6, ¶ 7); *see also id.*, p. 10 ("Dr. Zadina is prevented from using his knowledge and any information about opioids in every geographic region.").

[21] Doc. 223-6, ¶ 7 (emphasis supplied).

[22] Doc. 233-2, p. 8.

at all referring to competition.[23]   But that case recognizes the distinction between non-compete provisions, which are subject to § 23:921, and other types of employment agreement provisions (including confidentiality provisions), which are not subject to the statute.[24]

Louisiana law is clear that confidentiality provisions are not subject to La. Rev. Stat. § 23:921:

> An employer may require an employee not to disclose confidential information. "Confidentiality agreements have been held enforceable and not subject to the prohibition (and requirements) of La. R.S. 23:921." *Engineered Mechanical Services, Inc. v. Langlois,* 464 So.2d 329, 334, n. 15 (La. App. 1st Cir.1984); *see also* Rick J. Norman, *Louisiana Prac. Employment Law* § 14:14 (2009 ed.) (noting that "[a]n employee who contracts to keep his employer's business confidential is liable to his employer for breach of that agreement even though the confidential information might not technically constitute trade secrets."). A confidentiality agreement unlike a covenant not to compete "cannot be challenged as an unreasonable restraint of trade." 2 Louis Altman and Malla Pollack, Callmann *on Unfair Competition, Trademarks and Monopolies* § 14:6 (4th ed. 2010).

*NovelAire Techs., L.L.C. v. Harrison*, 2009-1372 (La. App. 4 Cir. 10/13/10), 50 So. 3d 913, 918–19.[25]   Because confidentiality provisions are not governed by La. Rev. Stat. § 23:921, Dr. Zadina's arguments regarding time and geographic limits are beside the point.   "By its terms, La. R.S. 23:921(C) does not impose any time, geographic, or other limitations upon voluntary agreements

---

[23] *See* Doc. 233-2, p. 8 (citing *Arthur J. Gallagher & Co. v. Babcock*, No. 08-185, 2011 WL 121891, at *2 (E.D. La. Jan. 10, 2011), *aff'd,* 703 F.3d 284 (5th Cir. 2012)).

[24] *See Gallagher & Co.*, 2011 WL 121891, at *1–2 (discussing the different types of employment agreement provisions at issue); *see also Arthur J. Gallagher & Co. v. Babcock*, 339 F. App'x 384, 386 (5th Cir. 2009) ("Appellees have not cross-appealed for the two types of uncontested provisions held valid (confidentiality and non-solicitation-of-employees).").

[25] *See also, e.g.*, *JJ Plan Company v. Gary Bowman,* No. 18-0798, 2018 WL 3579475, at *4 (W.D. La. July 25, 2018) ("The parties agree that non-solicitation (as well as confidentiality) clauses are not covered by [] § 23:921.") (citing *Smith, Barney, Harris Upham & Co. v. Robinson*, 12 F.3d 515, 519 (5th Cir. 1994)); *O'Sullivan v. Sunil Gupta, M.D., LLC*, No. 17-609, 2017 WL 3438349, at *4 (E.D. La. Aug. 10, 2017) (A confidentiality agreement is "not subject to § 23:921 and is enforceable under Louisiana law.") (quotation omitted); *Complete Oilfield Mgmt. & Maint. Inc. v. Hogg*, No. 15-00207, 2015 WL 1467104, at *4 (W.D. La. Mar. 25, 2015) (quoting *NovelAire Technologies, L.L.C. v. Harrison,* 50 So. 3d 913, 918 (La. App. 4 Cir. 2010)).

relating to nondisclosure of confidential or proprietary information or trade secrets . . . ."  *U.S. Envt'l Servs., L.L.C. v. Nelson*, 2010-1817 (La. App. 1 Cir. 8/25/11), 2011 WL 3759922, at *8 (unpublished opinion).

Rather than prohibit Dr. Zadina from exercising a lawful trade or business, Paragraph 7 "assumes" Dr. Zadina "will exercise his profession . . . with a competitor" and simply restricts Dr. Zadina's ability to use Cytogel's information when performing such work.  *See Smith, Barney, Harris Upham & Co. v. Robinson*, 12 F.3d 515, 519 (5th Cir. 1994).  Such a restriction is enforceable, reasonable, and not subject to La. Rev. Stat. § 23:921.  In other words, "[t]he Agreement simply does not meet the definition of the kinds of contracts covered by the statute." *Id.*

Dr. Zadina cites *O'Sullivan*, 2017 WL 3438349, in which an employee's agreement not to "accept or engage in any business or activity that requires him to use or reveal any confidential business information" was found to be a non-compete provision (and thus subject to § 23:921) rather than a confidentiality provision.  In that case, the court explained that "the restraint on revealing confidential information is nested within a restraint on O'Sullivan's ability to exercise 'a lawful profession, trade, or business'—the hallmark of a covenant not to compete that is subject to § 23:921." *Id.* at *5.  The court further noted that the terms of the agreement clearly reflected the parties' intent for the agreement to "function as a covenant not to compete"—for example, the provision referring to confidential information was included in a paragraph entitled "COVENANT NOT TO COMPETE." *Id.*  By contrast, the confidentiality provision in the Consulting Agreement is not encompassed within a broader restriction on Dr. Zadina's ability to engage in his business or profession.  And as noted above, the Consulting Agreement does not even make reference to

competition.  Because Paragraph 7 is a confidentiality provision that is not subject to § 23:921, Dr.

Zadina's motion should be denied.

**B.      Neither sentence of Paragraph 8 is subject to La. Rev. Stat. § 23:921.**

Dr. Zadina's arguments relative to Paragraph 8 (which contains an intellectual property

provision) also hinge on selective quotations and mischaracterizations of the Consulting

Agreement.  According to Dr. Zadina, Paragraph 8 "states that any intellectual property relating to

opioids 'shall remain the sole and exclusive property of and for the benefit of Cytogel.'"  Doc.

233-2, pp. 12–13 (citing Doc. 223-6, ¶ 8).  But, once again, that is not what the Consulting

Agreement says.  Read in full, Paragraph 8 states:

> This activity by Consultant is not related to, or performed as part of, or during, his
> official duties at the Department of Veterans Affairs or Tulane University.
> Consultant acknowledges that any inventions, processes, methods, techniques,
> formulae, compounds, designs, improvements, writings, tradenames, trademarks,
> copyrights, patents, trade secrets and other intellectual properties <u>that may result or
> emerge from materials or information provided by Cytogel, its employees or other
> consultants, or on the premises of Cytogel, or as a result of the consulting process,</u>
> shall remain the sole and exclusive property of and for the benefit of Cytogel.[26]

Contrary to Dr. Zadina's argument, this intellectual property provision does not afford Cytogel

"universal ownership over all of Dr. Zadina's opioid-related intellectual property."  Doc. 233-2, p.

13.

It is well-settled that intellectual property provisions are not subject to § 23:921:

> An employer . . . "may require the employee to disclose and assign his inventions
> to the employer; this is the usual practice in U.S. technology companies."  [Louis
> Altman and Malla Pollack, *Callmann on Unfair Competition, Trademarks and
> Monopolies* (4th ed. 2010)] at § 14:17.  This type of employee-invention
> assignment agreement—contractual requirement tha[t] an employee's inventions
> or improvements made during the employment shall be the property of the
> employer—is "not a covenant not to compete, does not limit the employee's post-
> employment activities except with respect to the affected inventions and

---

[26] Doc. 223-6, ¶ 8 (emphasis supplied).

improvements, and is not subject to the limitations and requirements applicable to covenants not to compete." *Callmann, supra* (citing *Novelaire I, supra*).

*NovelAire Techs.*, 50 So. 3d at 918–19. Paragraph 8 freely permits Dr. Zadina to develop intellectual property but, appropriately and unsurprisingly, provides that intellectual property that results or emerges from materials or information provided by Cytogel (or its employees or consultants, or on its premises) or as a result of the consulting process belongs to Cytogel. Similar to the confidentiality provision, this paragraph "assumes" Dr. Zadina "will exercise his profession . . . with a competitor" and simply confirms that Cytogel owns intellectual property that results or emerges from Cytogel's materials or information. *See Robinson*, 12 F.3d at 519.

To support his argument relative to Paragraph 8, Dr. Zadina ignores the text of the Consulting Agreement and primarily cites to one page of the deposition testimony of Mr. Maglaris.[27] In doing so, Dr. Zadina fails to acknowledge the text of the very next page, in which Mr. Maglaris noted the desire to be "precise" and clarified that the preceding statement regarding ownership applied to compounds that were "helped by or informed by the knowledge that [Dr. Zadina] gained from [Cytogel]."[28] While such extrinsic evidence is not properly considered in the first place, it confirms the conclusion that Paragraph 8 is an intellectual property provision rather than a non-compete provision.

One last argument by Dr. Zadina requires mention. Although he does not quote any part of it, Dr. Zadina suggests that the first sentence of Paragraph 8 is a non-compete provision because

---

[27] *See* 233-2, p. 13 (citing Maglaris Dep: 111:5–11).

[28] *See* Maglaris Dep. 111:5–111:22. Mr. Christie and Dr. Zadina also testified that this paragraph's terms were narrower than Dr. Zadina characterizes them in his motion. *See* Zadina Dep. 81:13–82:8; Christie Dep. 62:4–21.

of certain extrinsic evidence.  Doc. 223-3, p. 11.[29]  As discussed below, Dr. Zadina's attempt to

rely on extrinsic evidence (namely, snippets of testimony or pleadings taken out of context) only

serves to demonstrate why his motion should be denied.  In any event, Dr. Zadina's argument lacks

any substance.[30]   The first sentence of Paragraph 8 of the Consulting Agreement provided

assurance, on the front-end, to Tulane, VA, and Cytogel that Dr. Zadina's work for each entity

would not overlap.  If Dr. Zadina found the first sentence of Paragraph 8 disagreeable, he could

terminate his Cytogel consultancy without penalty—which is exactly what he did in 2013.  This

sentence does not restrain Dr. Zadina "from exercising a lawful profession, trade, or business of

any kind."  La. Rev. Stat. § 23:921.  Subject to the other provisions (e.g., the confidentiality

provision in Paragraph 7 and the intellectual-property provisions elsewhere), Dr. Zadina could ply

his trade anywhere and for anyone.  La. Rev. Stat. § 23:921 does not apply to either sentence of

Paragraph 8, and the motion should be denied.

### C.   Dr. Zadina's reliance on extrinsic evidence to manufacture a purported non-compete restriction requires the denial of his motion.

As set forth above, the Court need only consider the terms of the Consulting Agreement to

determine that it is not a non-competition agreement and deny Dr. Zadina's motion. Rather than

address the text of the agreement, Dr. Zadina's motion relies solely on extrinsic evidence taken

wholly out of context to manufacture a putative "non-compete" restriction.  This tack also fails.

---

[29] For example, he cites to Cytogel's Counterclaims, which state: "Dr. Zadina agreed that the activities to be performed in connection with the Consulting Agreement were 'not related to' his official duties and the research that he was conducting at VA or Tulane University.  This provision was critical for Cytogel precisely because Cytogel wanted to insure that Dr. Zadina was not developing a competing compound on behalf of Tulane or VA <u>at the same time</u> he was working with Cytogel."  Doc. 220, ¶ 21 (emphasis supplied).

[30] It is also unclear what relief Dr. Zadina would gain from having this sentence nullified or reformed, as a nearly identical sentence appears in Paragraph 2, which he has not challenged.  *See* Doc. 223-6, p. 2, ¶ 1.

Dr. Zadina's reliance on extrinsic evidence is improper because he has not identified any ambiguity in the contract.   Reliance on extrinsic evidence is appropriate only when a contract is ambiguous.  *E.g., Block One Marine*, 2010 WL 1424410 at *2 (E.D. La. Apr. 6, 2010); *see also* La. Civ. Code art. 2046.  And, "[w]hen a contract is ambiguous, the trier of fact must resolve the factual issue of intent, and judgment on the pleadings or summary judgment is improper." *Hanover Ins. Co. v. Superior Labor Servs., Inc.,* No. 11-2375, 2018 WL 999880, at *5 (E.D. La. Feb. 21, 2018).  Dr. Zadina may no longer like the terms of the Consulting Agreement, but he cannot use extrinsic evidence to manufacture a § 23:921 issue and avoid those plain terms.  *See id.*; *see also Reg'l Urology, L.L.C. v. Price*, 42,789 (La. App. 2 Cir. 9/26/07), 966 So. 2d 1087, 1095 ("Review of the Amendment reveals neither ambiguities nor uncertainties about the meaning and intent of the parties.").

For purposes of La. Rev. Stat. § 23:291, it is far from clear that courts may consider extrinsic evidence to determine whether a contract contains a non-competition provision.[31] Further, even if the Court were to consider extrinsic evidence, "[c]ontract provisions susceptible to different meanings should be interpreted . . . to preserve validity [of the contract]." *Texas E. Transmission Corp. v. Amerada Hess Corp.*, 145 F.3d 737, 742 (5th Cir. 1998) (quoting *Gibbs Constr. Co. v. Thomas,* 500 So.2d 764, 769 (La. 1987)).  Moreover, competent summary judgment evidence confirms that Paragraphs 7 and 8 were confidentiality and intellectual property provisions,[32] rather than non-compete provisions.  Simply because Cytogel was concerned about

---

[31] None of the cases cited by Dr. Zadina considered extrinsic evidence when making this threshold determination.  *NovelAire*, 50 So. 3d at 918, counsels against such an approach.  *See id.* (determining whether the statute applied solely on the face of an agreement, rather than also considering an injunction crafted in relation to that agreement).

[32] *See, e.g.*, Maglaris Dep. 301:16–18 (Paragraphs 7 and 8 were drafted to be "a confidentiality agreement provision and an intellectual property provision.").

Dr. Zadina using its confidential information and intellectual property does not transform the Consulting Agreement into a non-competition agreement.   Accordingly, summary judgment should be denied.

**V.      La. Rev. Stat. § 23:921 does not apply because the agreement does not have a deleterious effect on the public or contravene some other matter of public policy.**

Even if the Consulting Agreement contained a non-compete provision (it does not) such that § 23:921 facially applied, the Court would need to consider the purported non-compete provision with respect to the policy justifications for La. Rev. Stat. § 23:921 before proceeding to the putative merits of Dr. Zadina's arguments.  *See S.E. Auto Dealers Rental Ass'n v. EZ Rent to Own, Inc.,* 980 So.2d 89, 99 n. 11 (La. App. 4th Cir. 2008) (pretermitting consideration of independent-contractor argument because La. Rev. Stat. 23:291 was inapplicable); *see also Security Alarm Financing Enterps. v. Green*, No. 06-30332, 2007 U.S. App. LEXIS 4836 (5th Cir. March 2, 2007) (unpublished opinion).  While competent summary judgment evidence establishes, as a matter of law, that these policy justifications are not present in this case, at the very least, there is a genuine issue of material fact that requires the denial of Dr. Zadina's motion for summary judgment.

Parties are free to contract for any object that is lawful, possible, and determined or determinable. *Savoie*, 696 So.2d at 1381 (citing La. C.C. art. 1971).  While "[t]he state may legitimately restrict the parties' right to contract if the proposed bargain is found to have some deleterious effect on the public or to contravene some other matter of public policy," provisions such as La. Rev. Stat. § 23:921 do not apply where there are no such policy justifications.  *Id.* at 1381; *see also id.* at 1380 ("The legislature's original intent for the enactment of La. R.S. 23:921 was to establish a public policy which would forbid the exclusion of individuals from the fields of

work for which they were perhaps best suited at a time when the nation's economy was floundering and could not accommodate the vast numbers of workers in the work force.").

Given the policy justifications for La. Rev. Stat. § 23:921, the Louisiana Supreme Court has rejected the statute's application to a contract between two parties who were advised by counsel, holding, "La. R.S. 23:921 is not intended to protect independent corporations of [sic] on an equal footing from a bad bargain." *See Savoie*, 696 So. 2d at 1381. In doing so, the Louisiana Supreme Court endorsed an appellate court's holding that rejected the statute's application to an agreement by which a CPA became a partner in an accounting firm, securing additional benefits that included increased compensation and stature at the firm. *See id.* at 1380 (discussing *Winston v. Bourgeois, Bennett, Thokey & Hickey*, 432 So. 2d 936, 936 (La. App. 4th Cir. 1983)). Both *Savoie* and *Winston* make clear that the particular facts of each case must be explored in the light of the policy concerns behind § 23:921.

Dr. Zadina states that La. Rev. Stat. § 23:921 refers to "independent contractors,"[33] but that taken alone does not justify application of the statute. In determining whether La. Rev. Stat. § 23:921 applies to an agreement, "the form of the contract, as well as the label tacked to the individual, is immaterial." *Savoie*, 696 So.2d at 1380. Instead, "the pertinent inquiry includes the following: (1) whether all concerned are bound equally to the covenant; (2) whether the terms are fair to each party in all respects; (3) the amount of control over the individual; (4) whether the person is subject to the wishes of a controlling majority; (5) the circumstances under which the contract was executed; and (6) the effect on the individual's right to engage freely in his occupation after the association terminates." *Id.* As set forth below, each of these factors weighs against application of La. Rev. Stat. § 23:921 in this case.

---

[33] Doc. 233-2, p. 11 n.5.

First, all concerned were bound equally by the Consulting Agreement's terms.  Tulane, VA, and Cytogel were purportedly assured that Dr. Zadina would keep his work for Tulane and VA separate from his work for Cytogel.  If Tulane, VA, and Dr. Zadina had respected this separation, the instant litigation would not have materialized.[34]  Second, the terms were fair to each party.  Dr. Zadina bargained for and received a significant monthly income from Cytogel, and he continued to enjoy the benefits of this monthly income into 2013.  More importantly, Dr. Zadina received the benefit of increased access to Cytogel's materials and information, including through interactions with potential licensing partners.  *See Winston*, 432 So. 2d at 940 ("His partnership status surely provided him with a greater opportunity to meet and be accepted by the firm's clients—the type of exposure which would take years to achieve as a sole practitioner.").

Third and fourth, Dr. Zadina was not subject to Cytogel's wishes, nor that of a "controlling majority."  To the contrary, he requested the Consulting Agreement and drafted a majority of its terms, with the benefit of analysis by Tulane and VA ███████████████.  Cytogel never exercised control over Dr. Zadina; instead, it was Tulane and VA who did.   Like the plaintiff in *Winston*, Dr. Zadina opted to pursue "a step up the business ladder [that] meant more income plus prestige . . . [H]e voluntarily and without any hint of duress, opted to [enter into the contract] in order to secure the obvious benefits offered by" Cytogel.  *See Winston*, 432 So. 2d at 940.[35]  Fifth, the circumstances surrounding the contract's execution, and particularly the role of Dr. Zadina, ███████████ and Tulane's Office of Technology Transfer in preparing and reviewing the Consulting Agreement, demonstrate, at the very least, that the parties were on equal footing.

---

[34] *See* Maglaris Dep. 311:2–7 ("I wanted it ironclad so that we wouldn't end up in a room like this several years later . . . trying to ascertain who is the rightful owner.").

[35] *See also* Maglaris Dep. 313:7–21 (Dr. Zadina was brought "into the family," into Cytogel's "inner circle" and was made "essentially a part of the company.").

*Savoie*, 696 So. 2d at 1380.  Sixth, as discussed above, the Consulting Agreement does not prohibit Dr. Zadina from practicing his profession.  In sum, each of the factors listed above weighs against invalidating any provision of the Consulting Agreement.

Finally, and related to several of these non-exclusive factors, the manner in which Tulane, VA, and Dr. Zadina have coordinated their efforts provides an additional reason to uphold the Consulting Agreement.  Dr. Zadina, Tulane, and VA: (1) induced Cytogel to enter into the License Agreement and Consulting Agreement through assurances of confidentiality and protection of its intellectual property ownership; (2) used these agreements to access Cytogel's materials and information;  (3) misappropriated Cytogel's materials and information for a secret research project involving Cyt-1010 analogs; and (4) now attempt to suggest that Dr. Zadina lacked bargaining power such that the Consulting Agreement is null and the entire triumvirate is off the hook.[36]  The public policy justifications for La. Rev. Stat. § 23:921 do not apply to the facts of a case such as this.  *See also Napasco Int'l, Inc., W. Div. v. Maxson*, 420 So. 2d 1276 (La. App. 3d Cir. 1982) (considering whether party seeking to invoke non-compete statute was in bad faith).

████████████████████████████████████████████████████████████

████████████████████████[37]  In his motion, he now presents himself as a hapless employee.  Thus, "after reaping the benefits of other provisions in the contract, [Dr. Zadina] now challenges the validity of [it], evidently, in an effort to avoid fulfilling [his] end of the bargain."  *Savoie*, 696 So.2d at 1380.  Nullifying the contract or any of its provisions under these circumstances "would unduly infringe on the parties' freedom to contract and the corresponding obligations to perform or abstain from some performance."  *Id.*  Dr. Zadina has made no argument, much less set forth

---

[36] Although the motion is filed by Dr. Zadina, all three Counterclaim-Defendants have consistently coordinated their defense, and Tulane and Dr. Zadina are represented by the same counsel.

[37] *See* Christie Depo. 273:15–23, Ex. 92.

18

any evidence, that the public policy behind La. Rev. Stat. § 23:921 supports the application of the statute to the Consulting Agreement. For these additional reasons, the motion should be denied.

## VI. In the alternative, Dr. Zadina's motion should be denied because he fails to show that Louisiana law applies.

Dr. Zadina ignores wholesale any choice-of-law analysis and assumes that Louisiana law applies, but Dr. Zadina's failure to address this pivotal issue is ultimately inconsequential. There is no need to engage in a detailed choice-of-laws analysis to deny Dr. Zadina's motion because, even assuming that Louisiana law applies, the Consulting Agreement is enforceable. Thus, Cytogel submits that Dr. Zadina's motion should be denied on the merits as set forth above.

In the alternative, Cytogel submits that any choice-of-law determination would be premature on the facts presented by Dr. Zadina, giving rise to an additional reason to deny Dr. Zadina's motion. Dr. Zadina's motion raises two separate questions: (1) whether the Consulting Agreement contains a non-competition provision, and (2) whether that provision is enforceable on the facts of this case. In determining the state law that would apply to each of these questions, La. Civ. Code art. 3537, which provides the general choice-of-law rule for conventional obligations,[38] requires a determination of which state's "policies would be most seriously impaired if its law were not applied to that issue."

> That state is determined by evaluating the strength and pertinence of the relevant policies of the involved states in the light of: (1) the pertinent contacts of each state to the parties and the transaction, including the place of negotiation, formation, and performance of the contract, the location of the object of the contract, and the place of domicile, habitual residence, or business of the parties; (2) the nature, type, and purpose of the contract; and (3) the policies referred to in Article 3515, as well as the policies of facilitating the orderly planning of transactions, of promoting multistate commercial intercourse, and of protecting one party from undue imposition by the other.

---

[38] The Consulting Agreement does not contain a choice-of-law provision.

La. Civ. Code art. 3537.

Applying the Article 3537 factors to this case is far from a routine exercise.  For example, relevant to the second and third factors, Dr. Zadina seeks to nullify the entire Consulting Agreement, including its intellectual property provision.  With respect to certain issues, federal law applies to the interpretation and application of this provision.  *See SiRF Tech., Inc. v. Int'l Trade Comm'n*, 601 F.3d 1319, 1326 (Fed. Cir. 2010).  Dr. Zadina's attempt to manufacture an issue of Louisiana state law to nullify this provision threatens the uniform application of federal law. *See Marsh v. Austin-Fort Worth Coca-Cola Bottling Co.*, 744 F.2d 1077, 1080 (5th Cir. 1984) ("The Federal Courts Improvement Act was enacted in part to promote uniformity and efficient administration of the patent laws by centralizing patent appeals in the Court of Appeals for the Federal Circuit."); *see also Elecs. for Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1345 (Fed. Cir. 2005) (recognizing the "mandate to promote national uniformity in patent practice").  The complexity of the required analysis under Article 3537 renders Dr. Zadina's failure to brief this issue particularly problematic.

Dr. Zadina has failed to show that Article 3537 requires the application of Louisiana law to either (much less both) of the questions implicated by his motion.  Given Dr. Zadina's silence on these issues, Cytogel submits that the Court should deny Dr. Zadina's motion and "defer its choice-of-law decision until he presents "a factual record sufficient to permit the Court to undertake Louisiana's choice of law analysis."  *See S. Audio Servs., Inc. v. Carbon Audio, LLC*, 141 F. Supp. 3d 653, 662 n.4 (M.D. La. 2015) (citing La. Civ. Code art. 3537; 3542).

**VII.    In the alternative, even if the Court were to determine that a particular clause of the Consulting Agreement is unenforceable, the Consulting Agreement would remain intact, as would Cytogel's Counterclaims.**

Dr. Zadina's proclamation that the "Consulting Agreement Is Null and Void" falls flat.[39] Even the cases cited by Dr. Zadina hold that La. Rev. Stat. § 23:921 only nullifies or permits reformation of the particular provision of a contract that constitutes an impermissible restriction on competition.  *E.g.*, *Arthur J. Gallagher & Co*, 2011 WL 121891, at *2 (analyzing contract on a provision-by-provision basis).

> There is a particularly strong argument for enforcement of the remainder of a contract where the invalid provision is a non-competition provision. LSA–R.S. 23:921(A) provides: "Every contract or agreement, *or provision thereof,* by which anyone is restrained from exercising a lawful profession, trade, or business of any kind, except as provided in this Section, shall be null and void." (emphasis added). By specifically providing for nullification of a "provision" of a contract, LSA–R.S. 23:921(A) makes clear that the invalidity of a non-competition provision need not result in the nullification of the whole contract.

*Gearheard v. De Puy Orthopaedics, Inc.*, No. 99-cv-1091, 1999 WL 638582, at *8 (E.D. La. Aug. 19, 1999) (Clement, J.); *see also CBD Docusource, Inc. v. Franks*, 06-167 (La. App. 5 Cir. 6/28/06), 934 So. 2d 307, 311 ("[T]he phrase 'or provision thereof' refers to a non-competition provision within a contract that deals with other matters, such as an overall employment agreement. The phrase allows for nullification of the offending non-competition provision without voiding the entire employment agreement.").  Accordingly, even if the Consulting Agreement contained a non-competition provision (it does not), and even if the Court were to find that this hypothetical provision violated La. Rev. Stat. § 23:921, the remedy would be to reform or nullify that *particular provision* and leave the remainder of the Consulting Agreement intact.

---

[39] Doc. 233-2, p. 14.

Given that Dr. Zadina's motion relies on only a single short phrase from each of Paragraphs 7 and 8, it is not apparent which words in these paragraphs he is asking the Court to nullify or reform.  Even a rough understanding of Dr. Zadina's request, however, shows that its effect would be limited and would not significantly narrow the issues in the case.[40]

Dr. Zadina's overbroad construction of Paragraph 8 undermines his arguments that the Court should dismiss Count I (patent ownership).[41]  Contrary to Dr. Zadina's arguments, Cytogel's counterclaims relative to patent ownership do not require that Paragraph 8 be construed to grant Cytogel an ownership in "*any* intellectual property relating to opioids."[42]  Rather Cytogel's ownership is tailored to intellectual property "that may result or emerge from materials or information provided by Cytogel, its employees or other consultants, or on the premises of Cytogel, or as a result of the consulting process."[43]  Dr. Zadina has not challenged this aspect of the Consulting Agreement.  Accordingly, Count I would remain intact.

Dr. Zadina's arguments with respect to Counts IV (breach of contract), V (breach of the duty of good faith and fair dealing), X (LUTPA), XI (tortious interference with business relations), XII (tortious interference with contracts), and XIV (correction of inventorship) all rest on his erroneous argument that the entire agreement must be nullified if any part of the agreement were

---

[40] There is no need to consider reformation because the Consulting Agreement does not violate La. Rev. Stat. § 23:921.   Nonetheless, in the event that the Court finds that the Consulting Agreement contains a non-competition provision in violation of La. Rev. Stat. § 23:921, Cytogel is willing to provide supplemental briefing on the effect of nullifying or reforming the text at issue, once it is identified.

[41] *See* Doc. 233-2, p. 14.

[42] Doc. 233-2, p. 12 (emphasis added).

[43] Doc. 223-6, ¶ 8.

found to violate La. Rev. Stat. § 23:921.[44]   As set forth above, this argument is contrary to established Louisiana law.  Moreover, even if the confidentiality or intellectual property provisions of the Consulting Agreement were nullified, Counterclaims IV–V, X, XI–XII, and XIV would remain intact.  Dr. Zadina would still be accountable for his breaches of other provisions of the Consulting Agreement (*e.g.*, Paragraph 2), and Louisiana law would still support causes of action for Cytogel's non-contractual claims.  *See, e.g.*, *U.S. Environ'l Servs., L.L.C. v. Nelson*, 2010-1817 (La. App. 1 Cir. 8/25/11), 2011 WL 3759922, at *8 n.4 (unpublished opinion) (concluding that a confidentiality covenant did not violate  § 23:921 and observing, "[T]he confidentiality covenant relates to interests that are similar, if not identical, to interests also protected under the Unfair Trade Practices and Consumer Protection Law, La. R.S. 51:1401–27, and the Uniform Trade Secrets Act, La. R.S. 51:1431–39").

Finally, Dr. Zadina's one-sentence conclusory argument relative to Cytogel's standing to seek correction of inventorship (Count XIV) is contrary to established federal law.  Dr. Zadina asserts that Cytogel would have "no standing to challenge inventorship . . . without the Consulting Agreement as a basis for claiming ownership of the patent . . . ."[45]   But "an expectation of ownership of a patent is not a prerequisite . . . to possess standing to sue to correct inventorship under § 256." *Chou v. Univ. of Chi.*, 254 F.3d 1347, 1358 (Fed. Cir. 2001).  Section 256 "imposes no requirement of potential ownership in the patent on those seeking to invoke it." *Id.*  For these additional reasons, Dr. Zadina's motion for partial summary judgment should be denied.

---

[44] *See, e.g.*, Doc. 233-2, p. 15 ("[B]ecause the Consulting Agreement is null and void, no breach can occur.").

[45] Doc. 233-2, p. 15.

## VIII.   **Conclusion**

Dr. Zadina cannot meet his burden.  Dr. Zadina has "overlooked or ignored" evidence in the record: the terms of the Consulting Agreement.  *See Page v. Dunn*, No. CV 16-3621, 2017 WL 5599512, at *2 (E.D. La. Nov. 21, 2017) (quotation omitted).  On the face of the agreement, there is no non-competition provision, and summary judgment should be denied.  Further, insofar as Dr. Zadina seeks to manufacture an issue for summary judgment by relying on snippets of deposition testimony and pleadings, which have been taken out of context, his reliance on such extrinsic evidence provides an additional basis by which to deny his motion for summary judgment.  And, read in context, even the extrinsic evidence cited by Dr. Zadina demonstrates that the Consulting Agreement did not contain a non-competition provision.  In addition, even if the Consulting Agreement did contain a hypothetical non-competition provision, La. Rev Stat. §23:921 would not apply because the specific facts of this case do not implicate the statute's policy concerns.  And, even if the Consulting Agreement were not enforceable under Louisiana law (it is), Dr. Zadina has not demonstrated that Louisiana law applies, rendering his motion incomplete, at best.  Finally, Dr. Zadina's motion, if granted, at most would require the reformation of a few words of the Consulting Agreement but would leave intact each of Cytogel's counterclaims.   Cytogel respectfully requests, therefore, that the Court deny Dr. Zadina's motion.

Respectfully submitted,

_/s/ Eva J. Dossier_
Richard C. Stanley, 8487
Bryan C. Reuter, 23910
Eva J. Dossier, 35753
Matthew J. Paul, 37004
Stanley, Reuter, Ross, Thornton & Alford, L.L.C.
909 Poydras Street, Suite 2500
New Orleans, Louisiana 70112
Telephone: 504-523-1580
Facsimile: 504-524-0069
rcs@stanleyreuter.com
bcr@stanleyreuter.com
ejd@stanleyreuter.com
esh@stanleyreuter.com
mjp@stanleyreuter.com

George G. Gordon
Joseph J. Gribbin
Dechert LLP
Cira Centre, 2929 Arch Street
Philadelphia, PA 19104
(215) 994-4000
george.gordon@dechert.com
joseph.gribbin@dechert.com

Jonathan D. Loeb
Dechert LLP
2440 W. El Camino Real
Suite 700
Mountain View, CA 94040
(650) 813-4800
jonathan.loeb@dechert.com

Katherine M. Wyman
Dechert LLP
1095 Avenue of the Americas
New York, New York 10036
(212) 698-3500
katherine.wyman@dechert.com

_Counsel for Cytogel Pharma, LLC_

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on this 31st day of August, 2018, I electronically filed the foregoing document with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.  I further certify that I mailed the foregoing document and the notice of electronic filing by first class U.S. mail to any non-CM/ECF participants.

*/s/ Eva J. Dossier*
_____
