UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| THE UNITED STATES and <br> THE ADMINISTRATORS OF THE <br> TULANE EDUCATIONAL FUND <br><br> Plaintiffs, <br><br> v. <br><br> CYTOGEL PHARMA, LLC, <br><br> Defendant. <br><br> CYTOGEL PHARMA, LLC, <br><br> Counterclaim-Plaintiff <br><br> v. <br><br> JAMES E. ZADINA, <br> THE UNITED STATES, and <br> THE ADMINISTRATORS OF THE <br> TULANE EDUCATIONAL FUND <br><br> Counterclaim-Defendants | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) Civil Action No. 2:16-cv-13987 <br> ) <br> ) Section E <br> ) Judge Susie Morgan <br> ) <br> ) Division 1 <br> ) Magistrate Judge Janis van Meerveld <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**CYTOGEL PHARMA, LLC'S STATEMENT OF
MATERIAL FACTS PURSUANT TO LOCAL RULE 56.2**

Cytogel Pharma, LLC ("Cytogel"), respectfully submits the following statement of material facts that present a genuine issue pursuant to Local Rule 56.2. Insofar as Dr. Zadina's statement of facts ("Zadina SOF") "consists of argumentation or conclusions of law rather than facts as contemplated by Uniform Local Rules 56.1 and 56.2," Cytogel submits that the Court should disregard it. *See Vaughn v. Wal-Mart Stores, Inc.*, No. 09-962, 2011 WL 612807, at *1 (M.D. La. Feb. 11, 2011). As set forth below, and for purposes of opposing the motion for summary

1

judgment, Cytogel disputes Zadina SOF ¶¶ 5–7, 9–10, 12–13, 19, and 24–25 and sets forth the following facts.

1. Dr. Zadina was a consultant for Cytogel from 2003 through 2013.[1] In 2013, Dr. Zadina chose to terminate the consultancy.[2] Dr. Zadina describes his consultancy with Cytogel as in the nature of a "partnership."[3]

2. In October 2006, Dr. Zadina requested a written consulting agreement by which he would receive monthly payments from Cytogel for such work, in addition to any royalties Dr. Zadina was entitled to pursuant to his agreements with Tulane and VA.[4]

3. The parties spent months negotiating the provisions of the Consulting Agreement.[5]

4. Dr. Zadina wrote the first draft of the Consulting Agreement.[6]

5. Paragraphs 7 and 8 of the agreement were inserted to accommodate Cytogel's request for a confidentiality and an intellectual property provision, respectively.[7]

6. Zadina provided the confidentiality provision (Paragraph 7).[8]

7. The first sentence of Paragraph 8 is a nearly identical repeat of Paragraph 2, which Dr.

---

[1] *See* Exhibit A, Excerpts from the Deposition of James E. Zadina, Including Deposition Exhibits ("Zadina Dep.") at 54:19–55:6.

[2] Zadina Dep. 68:23–25.

[3] Zadina Dep. 56:15–18; Exhibit B, Excerpts from the Deposition of John Christie, Including Deposition Exhibits ("Christie Dep.") at 273:15–23, Christie Dep. Ex. 92.

[4] Zadina Dep. 83:2–5, Zadina Dep. Ex. 10.

[5] Zadina Dep. 68:19–22; 83:10–15.

[6] Zadina Dep. 84:17–22.

[7] *See, e.g.*, Exhibit C, Excerpts from the Deposition of Dean Maglaris, Including Deposition Exhibits ("Maglaris Dep.") at 301:16–18 (Paragraphs 7 and 8 were drafted to be "a confidentiality agreement provision and an intellectual property provision."), Maglaris Dep. Ex. 34; *see also* Exhibit D, April 20, 2007 email from Cytogel to Dr. Zadina (Cyt00003142–45).

[8] *See* Maglaris Dep. Ex. 34.

Zadina also drafted.[9]

8. Cytogel provided the initial draft of the remainder of Paragraph 8, based on discussions with Dr. Zadina, and Tulane's Department of Technology Transfer implemented certain revisions to that paragraph (among others).[10]

9. Paragraphs 7 and 8 contain confidentiality and intellectual property provisions.[11]

10. Throughout the contractual negotiation process, Tulane and VA ▓▓▓▓▓▓▓▓ reviewed various drafts of the Consulting Agreement and offered feedback, analysis, and revisions.[12]

11. Before Dr. Zadina executed it, ▓▓▓▓▓▓▓▓ VA's Chief of Staff, and Tulane's technology transfer department all reviewed and approved the Consulting Agreement.[13]

12. The Consulting Agreement contains various paragraphs addressing issues such as compensation, confidentiality, and intellectual property transfer. It does not contain a non-compete provision.[14] *Cf.* Zadina SOF ¶¶ 5–7, 12–13.

13. In addition to the Consulting Agreement, Cytogel was also protected by the License Agreement, which prohibited Dr. Zadina and Tulane from using the licensed compounds (including Cyt-1010) for commercial purposes.[15] *Cf.* Zadina SOF ¶¶ 5–7, 12–13, 25.

14. Dr. Zadina and Tulane used the licensed compounds for commercial purposes when they

---

[9] Zadina Dep. 85:15–25 (noting the only modification to Dr. Zadina's draft of Paragraph 2 was the phrase, "at the present time").

[10] *See* Exhibit D (April 20, 2007 email from Cytogel to Dr. Zadina); Christie Dep. 47:11–23.

[11] Consulting Agreement (Doc. 223-6).

[12] Zadina Dep. 87:23–89:19, 91:25–93:24, 94:24–95:8; Zadina Dep. Exs. 16–18.

[13] Zadina Dep. 94:24–95:8, 95:19–96:8, 97:19–23; Zadina Dep. Exs. 16–18.

[14] Consulting Agreement (Doc. 223-3).

[15] *See* Exhibit E, License Agreement, ¶ 2.1.

developed the new Cyt-1010 analogs.[16]

15. Pursuant to his consultancy with Cytogel, Dr. Zadina was a member of Cytogel's inner circle and afforded access to its most confidential information regarding the development of Cyt-1010.[17]

16. Tulane and VA were aware of Dr. Zadina's special role at Cytogel, including that he was a member of Cytogel's advisory board.[18]

17. Tulane and VA were also aware of the constraints of the Consulting Agreement, which they had reviewed and revised, and the License Agreement, to which Tulane was a party.[19]

18. Nonetheless, at the same time that he was working for Cytogel pursuant to the Consulting Agreement, Dr. Zadina, with Tulane's and VA's blessing, was secretly developing analogs of Cyt-1010 for clinical application.[20]

19. After Dr. Zadina and Tulane first revealed to Cytogel the existence of the new analogs in 2010, Cytogel began disengaging from Dr. Zadina.[21] Cf. Zadina SOF ¶19.

20. At no time prior to the filing of Dr. Zadina's motion for summary judgment, did Dr. Zadina, Tulane, VA, or Cytogel indicate that they interpreted the Consulting Agreement to contain a non-compete provision.

---

[16] *See, e.g.*, Zadina Dep. 209:7–22, 232:23–233:3; Exhibit F, Excerpts from the Deposition of Xing Zhang ("Zhang Dep."), 92:24–93:2.

[17] Maglaris Dep. 313:6–21, 314:21–25.

[18] Zadina Dep. 100:1–101:9.

[19] *See* Exhibit E; Zadina Dep. 87:23–89:19; 91:25–93:24; 94:24–95:8; 95:19–96:8; 97:19–23; Zadina Dep. Exs. 16–18.

[20] Zadina Dep. 194:17–21; 228:2–230:15.

[21] Maglaris Dep. 311:2–7.

21. Cytogel and Dr. Zadina were equally bound by the Consulting Agreement.[22]

22. The terms of the Consulting Agreement were fair to each party in all respects.[23]

23. The Consulting Agreement does not restrain Dr. Zadina from exercising a profession, trade, or business.[24]

24. The Consulting Agreement permitted Dr. Zadina to work on endomorphins, opiates, or opioids, subject to the terms of the agreement.[25]  *Cf.* Zadina SOF ¶¶ 5–7, 12–14, 25.

25. Cytogel owns the intellectual property that results or emerges from materials or information provided by Cytogel, its employees or other consultants, or on the premises of Cytogel, or as a result of the consulting process.[26]  *Cf.* Zadina SOF ¶¶ 9–10.

26. Cytogel does not claim to own all endomorphin-based compounds.[27]  *Cf.* Zadina SOF ¶ 10.

27. The bases for Cytogel's breach of contract claims are set forth in its Counterclaims and discovery responses.  Taking a single supporting allegation out of context may misrepresent the nature of Cytogel's claims.  *Cf.* Zadina SOF ¶¶ 21–22, 24.  For example, it would be incorrect to state that a single allegation is "a basis" for a claim, insofar as that could suggest the allegation is a necessary component of the claim or that Cytogel believes the allegation is sufficient, by itself, to state a claim.  *Cf.* Zadina SOF ¶¶ 21–22, 24.

---

[22] *See* Consulting Agreement (Doc. 223-6).

[23] *See* Consulting Agreement (Doc. 223-6).

[24] *See* Consulting Agreement (Doc. 223-6).

[25] Consulting Agreement (Doc. 223-6).

[26] *See* Consulting Agreement (Doc. 223-6).

[27] Consulting Agreement (Doc. 233-6).

28. Cytogel does not contend that it breached the Consulting Agreement for Dr. Zadina to state in a published interview that he was considering commercializing certain compounds. *Cf.* Zadina SOF ¶ 24. The facts underlying that statement, however, appear to pertain to a breach of the Consulting Agreement.

Respectfully submitted,

*/s/ Eva J. Dossier*
Richard C. Stanley, 8487
Bryan C. Reuter, 23910
Eva J. Dossier, 35753
Matthew J. Paul, 37004
Stanley, Reuter, Ross, Thornton & Alford, L.L.C.
909 Poydras Street, Suite 2500
New Orleans, Louisiana 70112
Telephone: (504) 523-1580
Facsimile: (504) 524-0069
rcs@stanleyreuter.com
bcr@stanleyreuter.com
ejd@stanleyreuter.com
mjp@stanleyreuter.com

George G. Gordon
Joseph J. Gribbin
Dechert LLP
Cira Centre, 2929 Arch Street
Philadelphia, PA 19104
(215) 994-4000
george.gordon@dechert.com
joseph.gribbin@dechert.com

Jonathan D. Loeb
Dechert LLP
2440 W. El Camino Real
Suite 700
Mountain View, CA 94040
(650) 813-4800
jonathan.loeb@dechert.com

Katherine M. Wyman
Dechert LLP
1095 Avenue of the Americas
New York, New York 10036
(212) 698-3500
katherine.wyman@dechert.com
Counsel for Cytogel Pharma, LLC

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 31st day of August, 2018, I electronically filed the foregoing document with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record. I further certify that I mailed the foregoing document and the notice of electronic filing by first class U.S. mail to any non-CM/ECF participants.

/s/ *Eva J. Dossier*