UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| THE UNITED STATES and THE ADMINISTRATORS OF THE TULANE EDUCATIONAL FUND,     Plaintiffs | CIVIL DOCKET |
| VERSUS | NO. 16-13987 |
| CYTOGEL PHARMA, LLC,     Defendant | SECTION: "E" (1) |

### ORDER AND REASONS

Before the Court is Counterclaim-Defendant Dr. James E. Zadina's Motion for Partial Summary Judgment on Counts 1, 4, 5, 9, 10, 12, and 14[1] of Defendant Cytogel Pharma, LLC's ("Cytogel") Second Amended and Restated Counterclaims.[2] Cytogel opposes this motion.[3] For the reasons that follow, Dr. Zadina's Motion for Partial Summary Judgment is **DENIED**.

### BACKGROUND[4]

In the 1990s, Dr. Zadina and his colleagues at Tulane University developed synthetic peptides that stimulate the mu opioid receptor and are related to endomorphins, which are opioid peptides found naturally in the human body.[5] Dr. Zadina and Plaintiff the Administrators of the Tulane Educational Fund ("Tulane") obtained two patents, U.S. Patent Nos. 5,885,958 ("the '958 Patent") and 6,303,578 ("the '578 Patent"), claiming synthetic opioid compounds.[6]

---

[1] Dr. Zadina moves for summary judgment on Count 11, but Cytogel brings Count 11 against Tulane and the United States, not against Dr. Zadina. R. Doc. 220 at 42. As a result, the Court construes the instant motion as a motion for partial summary judgment on Counts 1, 4, 5, 9, 10, 12, and 14 of Cytogel's counterclaims.
[2] R. Doc. 223.
[3] R. Doc. 253.
[4] For purposes of this motion, Dr. Zadina "does not dispute the facts set forth in cited paragraphs of Cytogel's pleadings." R. Doc. 223-3 at 7 n.3.
[5] R. Doc. 233-1 at 8, ¶ 16; R. Doc. 285 at 6, ¶ 16.
[6] R. Doc. 233-1 at 8, ¶ 16; R. Doc. 285 at 6, ¶ 16.

1

On November 1, 2006, Cytogel executed a contract entitled "Consulting Agreement"[7] with Dr. Zadina, an employee of Tulane, and the Department of Veterans Affairs ("VA").[8] In the contract, Dr. Zadina agreed to "provide advice and consultation on topics related to the development of opioid compounds for clinical application."[9] The Consulting Agreement included the following provision relating to ownership of intellectual property:

> 8. . . . Consultant acknowledges that any inventions, processes, methods, techniques, formulae, compounds, designs, improvements, writings, tradenames, trademarks, copyrights, patents, trade secrets and other intellectual properties that may result or emerge from materials or information provided by Cytogel, its employees or other consultants, or on the premises of Cytogel, or as a result of the consulting process, shall remain the sole and exclusive property of and for the benefit of Cytogel.[10]

Cytogel alleges Dr. Zadina, as a consultant to Cytogel, accessed confidential data and information relating to a synthetic opioid compound called Cyt-1010.[11] Cytogel alleges Dr. Zadina used this information to further his own secret work on the development of closely-related opioid compounds that would compete directly with Cyt-1010.[12]

From September 8, 2010 onward, Cytogel "disengaged from" Dr. Zadina.[13] On August 22, 2012, Dr. Zadina and his colleague at Tulane Dr. Laszlo Hackler formally assigned to Tulane and the VA their ownership rights to a patent application they filed for a group of synthetic opioid compounds.[14] On May 6, 2014, the resulting patent, U.S. Patent No. 8,716,436 B2 ("the '436 Patent"), issued.[15] Cytogel alleges the compound

---

[7] R. Doc. 223-3.
[8] R. Doc. 233-1 at 8, ¶ 15; R. Doc. 285 at 6, ¶ 15.
[9] R. Doc. 223-3 at 2, ¶ 1.
[10] *Id.* at 3–4, ¶ 7–8.
[11] R. Doc. 220 at 13–18.
[12] *Id.* at 22, ¶ 61.
[13] R. Doc. 233-1 at 9, ¶ 19; R. Doc. 285 at 7, ¶ 19.
[14] R. Doc. 1 at 12, ¶ 47; R. Doc. 220 at 20, ¶ 55.
[15] R. Doc. 233-1 at 9, ¶ 20; R. Doc. 285 at 7, ¶ 20.

claimed in the '436 Patent is a "modified version of Cyt-1010 and plainly designed to compete with [Cyt-1010] as a potential pharmaceutical treatment."[16]

On August 19, 2016, Plaintiffs Tulane and the United States of America filed suit against Cytogel.[17] Plaintiffs allege Cytogel has asserted sole ownership of the '436 Patent and threatened to pursue legal remedies against them.[18] Plaintiffs seek declaratory judgments of ownership and inventorship of the '436 Patent.[19]

On July 23, 2018, Cytogel filed its Second Amended and Restated Counterclaims, which it brings against Plaintiffs Tulane and the United States of America and Counterclaim-Defendant Dr. Zadina.[20] Cytogel raises the following fourteen counterclaims:

> (1) Declaratory Judgment of Cytogel's Ownership of Rights in the '436 Patent,
> (2) Infringement of the '958 Patent,
> (3) Infringement of the '578 Patent,
> (4) Breach of Contract (Consulting Agreement),
> (5) Breach of the Duty of Good Faith and Fair Dealing (Consulting Agreement),
> (6) Breach of Contract (License Agreement),
> (7) Breach of Duty of Good Faith and Fair Dealing (License Agreement),
> (8) Misappropriation of Trade Secrets,
> (9) Receipt of a Thing Not Owed,
> (10) Violation of the Unfair Trade Practices and Consumer Protection Law,
> (11) Tortious Interference with Business Relations,
> (12) Tortious Interference with Contractual Relations,
> (13) Unjust Enrichment, and
> (14) Correction of Inventorship of '436 Patent and Any Related Applications Which Issue.[21]

---

[16] R. Doc. 220 at 23, ¶ 64.
[17] R. Doc. 1.
[18] *Id*. at 14–16, ¶ 53–62.
[19] *Id*.
[20] R. Doc. 220.
[21] *Id*. at 28–51. On February 6, 2017, the Court issued its Order and Reasons granting the Government's Rule 12(b)(1) Motion to Dismiss counts 2, 3 and 8 to 15 of Cytogel's counterclaims against it. R. Doc. 58. On March 28, 2017, the Court granted Cytogel's Motion for Reconsideration and vacated its February 6, 2017 Order and Reasons with respect to Counterclaims 8-11 and 13. R. Doc. 67. The Court, in reconsidering its earlier order and reasons, denied the Government's 12(b)(1) motion to dismiss with respect to Counterclaims 8, 9 and 13. R. Doc. 67 at 14. The Court deferred ruling on the Government's 12(b)(1) motion with respect to Counterclaim 10, *id*., and dismissed that motion as moot on April 13, 2017, R. Doc. 69. On May 2, 2017, the Government filed a motion to dismiss Counts 10, 11, and 13 of Cytogel's Amended

On August 6, 2018, Dr. Zadina filed a Motion for Partial Summary Judgment on Counts 1, 4, 5, 9, 10, 12, and 14 of Cytogel's counterclaims.[22] He argues the Consulting Agreement is an invalid noncompetition agreement under La. Rev. Stat. § 23:921, which governs covenants not to compete.[23] He argues Counts 1, 4, 5, 9, 10, 12, and 14 of Cytogel's counterclaims fail as a result.[24] Dr. Zadina refiled a Statement of Undisputed Material Facts and a Memorandum in Support of his motion on August 13, 2018.[25]

On August 31, 2018, Cytogel filed its opposition to Dr. Zadina's motion.[26] Cytogel argues the Consulting Agreement is not a noncompetition agreement.[27] Dr. Zadina replied to Cytogel's opposition on September 6, 2018.[28] Cytogel filed a Revised Statement of Facts on September 10, 2018.[29]

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[30] "An issue is material if its resolution could affect the outcome of the action."[31] When assessing whether a material factual dispute exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."[32] All reasonable inferences are drawn in favor of the non-moving party.[33]

---

Counterclaims. R. Doc. 76. In its opposition to the Government's motion, Cytogel states it does not oppose dismissal of Counterclaims 11 and 13 against the Government. R. Doc. 81.
[22] R. Doc. 223.
[23] R. Doc. 233-2.
[24] *Id.*
[25] R. Doc. 233.
[26] R. Doc. 253.
[27] *Id.*
[28] R. Doc. 263.
[29] R. Doc. 285.
[30] FED. R. CIV. P. 56; *see also Celotex*, 477 U.S. at 322–23.
[31] *DIRECTV, Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005).
[32] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000).
[33] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

There is no genuine issue of material fact if, even viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party, thus entitling the moving party to judgment as a matter of law.[34]

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." To satisfy Rule 56's burden of production, the moving party must do one of two things: "the moving party may submit affirmative evidence that negates an essential element of the nonmoving party's claim" or "the moving party may demonstrate to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." If the moving party fails to carry this burden, the motion must be denied. If the moving party successfully carries this burden, the burden of production then shifts to the non-moving party to direct the Court's attention to something in the pleadings or other evidence in the record setting forth specific facts sufficient to establish that a genuine issue of material fact does indeed exist.[35]

If the dispositive issue is one on which the non-moving party will bear the burden of persuasion at trial, the moving party may satisfy its burden of production by either (1) submitting affirmative evidence that negates an essential element of the non-movant's claim, or (2) affirmatively demonstrating that there is no evidence in the record to establish an essential element of the non-movant's claim.[36] If the movant fails to affirmatively show the absence of evidence in the record, its motion for summary judgment must be denied.[37] Thus, the non-moving party may defeat a motion for

---

[34] *Hibernia Nat. Bank v. Carner*, 997 F.2d 94, 98 (5th Cir. 1993) (citing *Amoco Prod. Co. v. Horwell Energy, Inc.*, 969 F.2d 146, 147–48 (5th Cir. 1992)).
[35] *Celotex*, 477 U.S. at 322–24.
[36] *Id.* at 331–32 (Brennan, J., dissenting).
[37] *See id.* at 332.

summary judgment by "calling the Court's attention to supporting evidence already in the record that was overlooked or ignored by the moving party."[38] "[U]nsubstantiated assertions are not competent summary judgment evidence. The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim. 'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'"[39]

## LAW AND ANALYSIS

To prevail on a motion for partial summary judgment, a movant bears the burden of establishing the absence of any genuine issues of material fact and the movant's entitlement to judgment as a matter of law. The Court finds Dr. Zadina has failed to meet his burden of showing he is entitled to judgment as a matter of law that the Consulting Agreement is an unenforceable noncompetition agreement under Louisiana law.

La. R.S. 23:921 A(1) provides that "[e]very contract or agreement, or provision thereof, by which anyone is restrained from exercising a lawful profession, trade, or business of any kind, except as provided in this Section, shall be null and void."[40] The Louisiana Supreme Court has not directly addressed whether this provision applies to contracts addressing intellectual property ownership. When the Louisiana Supreme Court has not addressed an issue, the Court must "make an *Erie* guess and determine . . .

---

[38] *Id.* at 332–33. The burden would then shift back to the movant to demonstrate the inadequacy of the evidence relied upon by the non-movant. Once attacked, "the burden of production shifts to the nonmoving party, who must either (1) rehabilitate the evidence attacked in the moving party's papers, (2) produce additional evidence showing the existence of a genuine issue for trial as provided in Rule 56(e), or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f)." *Id.* at 332–33, 333 n.3.
[39] *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Celotex*, 477 U.S. at 324; *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) and quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n.7 (5th Cir. 1992)).
[40] La. R.S. 23:921 A(1).

how that court would resolve the issue if presented with the same case."[41] When making this guess, the Court "employ[s] Louisiana's civilian methodology, whereby [it] first examine[s] primary sources of law: the constitution, codes, and statutes."[42]

Paragraph 8 of the Consulting Agreement in this case deals with intellectual property ownership.[43] La. R.S. 23:921 does not explicitly address such provisions. In *NovelAire Techs., L.L.C. v. Harrison*,[44] an employee challenged an agreement stating that "[a]ny and all inventions, discoveries and improvements" the employee made during his employment would be the "sole and exclusive property" of the employer.[45] The agreement also required the employee to assign and convey to the employer "the sole and exclusive rights, title and interest in and to any such inventions, discoveries, and improvements, and Letters Patent for same."[46] The Louisiana Court of Appeal for the Fourth Circuit noted such clauses are the "usual practice in U.S. technology companies" and held this type of employee-invention assignment agreement was "not a covenant not to compete, does not limit the employee's post-employment activities except with respect to the affected inventions and improvements, and is not subject to the limitations and requirements applicable to covenants not to compete."[47] The Court is confident the Louisiana Supreme Court would come to the same conclusion.

Similar to the agreement in *NovelAire*, Paragraph 8 of the Consulting Agreement required Dr. Zadina to acknowledge intellectual property "that may result or emerge from materials or information provided by Cytogel . . . or as a result of the consulting process,

---

[41] *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 206 (5th Cir. 2007) (citing *Am. Int'l Specialty Lines Ins. Co. v. Canal Indem. Co.*, 352 F.3d 254, 260 (5th Cir.2003)).
[42] *Id.*
[43] R. Doc. 223-3 at 3, ¶ 7.
[44] 2009-1372 (La. App. 4 Cir. 10/13/10), 50 So. 3d 913.
[45] *NovelAire*, 50 So. 3d at 915.
[46] *Id.*
[47] *Id.* at 919.

7

shall remain the sole and exclusive property of and for the benefit of Cytogel."[48] The Consulting Agreement is not a noncompetition agreement and does not limit Dr. Zadina's activities except with respect to intellectual property resulting from his interactions with Cytogel.[49]

The policy justifications for La. R.S. 23:921 also weigh against finding the Consulting Agreement invalid under the statute. In *Louisiana Smoked Prod., Inc. v. Savoie's Sausage & Food Prod., Inc.*,[50] the Louisiana Supreme Court stated the statute's original purpose was "to protect employees and prevent them from contracting away their right to future employment[, and] . . . coverage was judicially extended to other classes of people who have uneven bargaining power."[51] The court refused to apply La. R.S. 23:921 to the parties in *Louisiana Smoked Prod.* because, among other reasons, the sophisticated parties in the case had equal bargaining power, and neither party had control over the other.[52] Similarly, Cytogel and Dr. Zadina are sophisticated parties, and neither party controlled the other. La. R.S. 23:921 does not apply to contractual provisions in a consulting agreement between two sophisticated parties governing intellectual property ownership.

---

[48] R. Doc. 223-3 at 3, ¶ 8.
[49] Although Dr. Zadina does not raise the argument in his motion, Cytogel, in its opposition, argues Paragraph 7 of the Consulting Agreement, which addresses confidentiality, is not a noncompetition agreement subject to La. R.S. 23:921. R. Doc. 253 at 8–11. The Court agrees. Confidentiality agreements are "enforceable and not subject to the prohibition (and requirements) of La. R.S. 23:921." *NovelAire*, 50 So. 3d at 918–19 (citing *Engineered Mechanical Services, Inc. v. Langlois*, 464 So.2d 329, 334, n. 15 (La.App. 1st Cir.1984); Rick J. Norman, *Louisiana Prac. Employment Law* § 14:14 (2009 ed.). No provision of the Consulting Agreement is a noncompetition agreement subject to La. R.S. 23:921.
[50] 96-1716 (La. 7/1/97), 696 So. 2d 1373, 1381.
[51] *Id.* (citing *Winston v. Bourgeois, Bennett, Thokey & Hickey*, 432 So. 2d 936, 938 (La. Ct. App. 1983)).
[52] *Id.* at 1380. Even though the Louisiana Supreme Court stated its holding was "narrow and limited to the facts and circumstances" of the case, *id.* at 1381, the court's analysis of the policy justifications for La. R.S. 23:921 is instructive in this case.

As a result, the Court finds Dr. Zadina has failed to meet his burden of showing he is entitled to judgment as a matter of law that the Consulting Agreement is an unenforceable noncompetition agreement under Louisiana law.

## **CONCLUSION**

For the foregoing reasons, **IT IS ORDERED** that Counterclaim-Defendant Dr. James E. Zadina's Motion for Partial Summary Judgment on Counts 1, 4, 5, 9, 10, 12, and 14 of Defendant Cytogel Pharma, LLC's ("Cytogel") Second Amended and Restated Counterclaims be and hereby is **DENIED.**[53]

**New Orleans, Louisiana, this 17th day of September, 2018.**

_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[53] R. Doc. 223.