# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **THE UNITED STATES and**<br>**THE ADMINISTRATORS OF THE**<br>**TULANE EDUCATIONAL FUND,**<br>    **Plaintiffs** | **CIVIL DOCKET** |
| **VERSUS** | **NO. 16-13987** |
| **CYTOGEL PHARMA, LLC,**<br>    **Defendant** | **SECTION: "E"** |

## ORDER AND REASONS

Before the Court are a Motion for Partial Summary Judgment as to Counts 5–13 of Cytogel Pharma LLC's ("Cytogel") Second Amended and Restated Counterclaims for Failure to Establish an Essential Element of Each Claim[1] and a Motion for Partial Summary Judgment on Counts 8 and 10–13 of Cytogel's Second Amended and Restated Counterclaims on peremption and prescription grounds,[2] filed by Plaintiff the Administrators of the Tulane Educational Fund ("Tulane") and Counterclaim-Defendant Dr. James E. Zadina. The United States joins the motions in part.[3] Cytogel opposes the motions.[4] For the reasons that follow, Tulane and Dr. Zadina's Motions for Summary Judgment are **GRANTED IN PART** and **DENIED IN PART**. The Court also addresses

---

[1] R. Doc. 279.

[2] R. Doc. 271.

[3] The United States joins the Motion for Summary Judgment on peremption and prescription grounds as to Count 10 of Cytogel's counterclaims, R. Doc. 271 at 1, and the Motion for Summary Judgment for failure to establish an essential element of each claim as to "counterclaims presently asserted against it: Counts 8, 10, 11, and 13," R. Doc. 279 at 1. This list does not include Count 9, which Cytogel brings against the Tulane and the United States, R. Doc. 220 at 39. As a result, in this Order, the Court does not address Count 9 as against the United States. The list includes Count 11 of Cytogel's counterclaims, which the Court dismissed as to the United States on March 28, 2017. R. Doc. 67.

  The Court dismissed Counts 10 and 13 of Cytogel's counterclaims as to the United States on September 17, 2018. R. Doc. 297. The only claim against the United States the Court addresses in this order is Count 8.

[4] R. Docs. 305, 321.

portions of pending motions to dismiss raising the same arguments as the instant motions for summary judgment.[5]

## **BACKGROUND**[6]

In the 1990s, Dr. Zadina and his colleagues at Tulane University researched and developed opioid compounds related to endomorphins, which are opioid peptides found naturally in the human body.[7] Based on their research, Tulane obtained two patents, U.S. Patent Nos. 5,885,958 ("the '958 Patent") and 6,303,578 ("the '578 Patent"), claiming these compounds.[8] On December 1, 2003, Tulane licensed the patents to Cytogel.[9]

After Tulane and Cytogel signed a Licensing Agreement, Dr. Zadina began performing consulting work for Cytogel pursuant to a Consulting Agreement.[10] He advised Cytogel on the development of Cyt-1010, a synthetic opioid peptide covered by the '958 and '587 Patents,[11] for commercial use as an analgesic.[12]

Dr. Zadina was a joint employee of Tulane and the Department of Veterans Affairs ("VA").[13] He and his colleague Dr. Laszlo Hackler developed new synthetic opioid compounds for Tulane and the VA.[14] Drs. Zadina and Hackler filed United States

---

[5] R. Docs. 74, 75, 301.
[6] The facts in this section are undisputed unless noted otherwise. For purposes of their Motion for Partial Summary Judgment as to Counts 5–13 of Cytogel's Second Amended and Restated Counterclaims, Tulane and Dr. Zadina do not dispute the facts set forth in portions of Cytogel's pleadings that they cite, R. Doc. 279-3 at 7 n.2. For purposes of their motion, they also do not dispute the facts set forth in their own statement of undisputed facts. *Id.*
[7] R. Doc. 1 at 4–5, ¶ 14–16; R. Doc. 220 at 9, ¶ 16.
[8] R. Doc. 1 at 5–6, ¶ 17–19; R. Doc. 220 at 9, ¶ 16.
[9] R. Doc. 1 at 6, ¶ 20; R. Doc. 220 at 9, ¶ 17.
[10] R. Doc. 1 at 6–9, ¶ 24–36; R. Doc. 220 at 10, ¶ 19.
[11] The parties' filings do not clarify whether Cyt-1010 is covered by the '958 Patent, the '587 Patent, or both patents.
[12] R. Doc. 1 at 5, 6, ¶ 16, 20–21; R. Doc. 220 at 13, ¶ 32.
[13] R. Doc. 1 at 3, ¶ 10–11; R. Doc. 220 at 7, ¶ 10.
[14] R. Doc. 1 at 9–10, ¶ 38–41; R. Doc. 220 at 19–21, ¶ 50–55.

Provisional Application 61/363,039 ("the Provisional Application") for these compounds.[15]

On September 8, 2010, Tulane sent Cytogel an email stating Dr. Zadina had designed a "new family of peptides" and had filed the related Provisional Application.[16] From that date onward, Cytogel "disengaged from Dr. Zadina" and stopped working with him."[17] On or around September 10, 2010, Dean Maglaris, Cytogel's chief executive officer, told John Christie of Tulane "he believed Cytogel owned the technology of the Provisional Application."[18] By November 22, 2011, Cytogel believed there was a "dispute over the technology of the Provisional Application as between Tulane and Cytogel."[19] On that date, Cytogel's counsel sent Tulane a letter asserting it had evidence Dr. Zadina "took vital and confidential information from Cytogel, . . . [and] develop[ed] a new molecule . . . based at least in part on the information that emerged from his consultancy with Cytogel."[20]

The Provisional Application was incorporated into United States Patent Application 13/477,423 ("the Patent Application"),[21] which was filed on May 22, 2012.[22] Drs. Zadina and Hackler executed an assignment of the Patent Application to Tulane and the VA on August 22, 2012,[23] and the assignment was recorded on September 25, 2012.[24]

---

[15] R. Doc. 271-4 at 4, ¶ 8; R. Doc. 321-1 at 4, ¶ 8.
[16] R. Doc. 271-4 at 5, ¶ 14; R. Doc. 321-1 at 5, ¶ 14.
[17] R. Doc. 271-4 at 5, ¶ 16; R. Doc. 321-1 at 6, ¶ 16.
[18] R. Doc. 271-4 at 6, ¶ 19; R. Doc. 321-1 at 8, ¶ 19.
[19] R. Doc. 271-4 at 8, ¶ 22; R. Doc. 321-1 at 10, ¶ 22.
[20] R. Doc. 271-4 at 8, ¶ 23; R. Doc. 321-1 at 10, ¶ 23.
[21] R. Doc. 271-4 at 4, ¶ 7; R. Doc. 321-1 at 4, ¶ 7.
[22] R. Doc. 271-15 at 2.
[23] R. Doc. 271-4 at 4, ¶ 10; R. Doc. 321-1 at 4, ¶ 10. Cytogel contests the validity of the assignment. R. Doc. 321-1 at 4, ¶ 10.
[24] R. Doc. 271-4 at 4, ¶ 12; R. Doc. 321-1 at 5, ¶ 12.

The Patent Application was published on December 20, 2012.[25] On May 6, 2014, the Patent Application issued as United States Patent 8,716,436 B2 ("'436 Patent").[26]

On August 19, 2016, the United States and Tulane filed suit against Cytogel for declaratory judgments of ownership and inventorship of the '436 Patent and related applications.[27] On September 7, 2016, Cytogel filed thirteen counterclaims against Plaintiffs Tulane and the United States, joining Dr. Zadina as Counterclaim-Defendant.[28] On July 23, 2018, Cytogel filed its First Amended and Restated Affirmative Defenses and Second Amended and Restated Counterclaims, which included a fourteenth counterclaim.[29]

The counterclaims at issue in these motions are: (5) Breach of the Duty of Good Faith and Fair Dealing Owed Under the Consulting Agreement against Dr. Zadina; (6) Breach of the Licensing Agreement against Tulane; (7) Breach of the Duty of Good Faith and Fair Dealing Owed Under the Licensing Agreement against Tulane; (8) Misappropriation of Trade Secrets in violation of the Louisiana Uniform Trade Secrets Act ("LUTSA")[30] against the United States, Tulane, and Dr. Zadina; (9) Receipt of a Thing Not Owed against Tulane and the United States;[31] (10) Violations of the Unfair Trade Practices and Consumer Protection Law ("LUTPA")[32] against Dr. Zadina and Tulane;[33] (11) Tortious Interference with Business Relations against Tulane;[34] (12) Tortious

---

[25] R. Doc. 271-4 at 4, ¶ 9; R. Doc. 321-1 at 4, ¶ 9.
[26] R. Doc. 1 at 11–12, ¶ 43–47; R. Doc. 220 at 21, ¶ 57.
[27] R. Doc. 1.
[28] R. Doc. 6.
[29] R. Doc. 220.
[30] LA. REV. STAT. § 51:1431 *et seq.*
[31] The Court does not address Count 9 as against the United States. *See supra*, n.3.
[32] LA. REV. STAT. § 51:1401 *et seq.*
[33] On September 17, 2018, the Court dismissed Count 10 of Cytogel's Second Amended and Restated Counterclaims as to the United States. R. Doc. 297.
[34] On March 28, 2017, the Court dismissed Count 11 of Cytogel's counterclaims as to the United States pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. R. Doc. 67. In its Cytogel's Second

Interference with Contractual Relations against Tulane and Dr. Zadina; and (13) Unjust Enrichment against Tulane.[35]

Tulane and Dr. Zadina filed the instant motions on September 10, 2018.[36] In their Motion for Partial Summary Judgment as to Counts 5–13 of Cytogel's Second Amended and Restated Counterclaims for Failure to Establish an Essential Element of Each Claim, they argue Cytogel has failed to establish essential elements of each claim.[37] In their Motion for Partial Summary Judgment based on peremption and prescription grounds, Tulane and Dr. Zadina argue Counts 8, 11, and 12 of Cytogel's Second Amended and Restated Counterclaims have prescribed, and Count 10 has perempted.[38] They argue Count 13, which alleges unjust enrichment, is based on the same facts as its other tort claims and fails as a result.[39] Cytogel opposes both motions.[40]

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[41] "An issue is material if its resolution could affect the outcome of the action."[42] When assessing whether a material factual dispute exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing

---

Amended and Restated Counterclaims, it realleges Count 11 as to the United States. R. Doc. 220. Because Count 11 has already been dismissed as to the United States, the Court does not address Count 11 in this order.

[35] On September 17, 2018, the Court granted the United States' unopposed motion to dismiss Count 13 of Cytogel's Second Amended and Restated Counterclaims as to the United States. R. Doc. 297.

[36] R. Docs. 271, 279.

[37] R. Doc. 279.

[38] R. Doc. 271-1.

[39] R. Doc. 279-1 at 26–27. In their motion for summary judgment on prescription grounds, Tulane and Dr. Zadina argue, although all Cytogel's tort claims have prescribed, they are entitled to judgment on Count 13 because an unjust enrichment claim cannot be used to circumvent prescription. R. Doc. 271-1 at 17–18. The Court does not address this argument because it does not find all of Cytogel's tort claims have prescribed.

[40] R. Docs. 305, 321.

[41] FED. R. CIV. P. 56; *see also Celotex*, 477 U.S. at 322–23.

[42] *DIRECTV, Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005).

the evidence."[43] All reasonable inferences are drawn in favor of the non-moving party.[44] There is no genuine issue of material fact if, even viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party, thus entitling the moving party to judgment as a matter of law.[45]

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." To satisfy Rule 56's burden of production, the moving party must do one of two things: "the moving party may submit affirmative evidence that negates an essential element of the nonmoving party's claim" or "the moving party may demonstrate to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." If the moving party fails to carry this burden, the motion must be denied. If the moving party successfully carries this burden, the burden of production then shifts to the non-moving party to direct the Court's attention to something in the pleadings or other evidence in the record setting forth specific facts sufficient to establish that a genuine issue of material fact does indeed exist.[46]

If the dispositive issue is one on which the non-moving party will bear the burden of persuasion at trial, the moving party may satisfy its burden of production by either (1) submitting affirmative evidence that negates an essential element of the non-movant's claim, or (2) affirmatively demonstrating that there is no evidence in the record to

[43] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000).
[44] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).
[45] *Hibernia Nat. Bank v. Carner*, 997 F.2d 94, 98 (5th Cir. 1993) (citing *Amoco Prod. Co. v. Horwell Energy, Inc.*, 969 F.2d 146, 147–48 (5th Cir. 1992)).
[46] *Celotex*, 477 U.S. at 322–24.

establish an essential element of the non-movant's claim.[47] If the movant fails to affirmatively show the absence of evidence in the record, its motion for summary judgment must be denied.[48] Thus, the non-moving party may defeat a motion for summary judgment by "calling the Court's attention to supporting evidence already in the record that was overlooked or ignored by the moving party."[49] "[U]nsubstantiated assertions are not competent summary judgment evidence. The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim. 'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'"[50]

## LAW AND ANALYSIS

I.     **Genuine issues of material fact regarding the Consulting Agreement and Licensing Agreement preclude summary judgment on Counts 5–7 of Cytogel's Second Amended and Restated Counterclaims. Tulane and Dr. Zadina are not entitled to judgment as a matter of law based on the Government License Defense.**

Cytogel brings Counts 5–7 under Louisiana contract law against Dr. Zadina and Tulane.[51] Count 5 alleges Dr. Zadina breached the duty of good faith and fair dealing owed under the Consulting Agreement by misappropriating Cytogel's confidential information.[52] Count 6 alleges Tulane breached its Licensing Agreement with Cytogel by

---

[47] *Id.* at 331–32 (Brennan, J., dissenting).

[48] *See id.* at 332.

[49] *Id.* at 332–33. The burden would then shift back to the movant to demonstrate the inadequacy of the evidence relied upon by the non-movant. Once attacked, "the burden of production shifts to the nonmoving party, who must either (1) rehabilitate the evidence attacked in the moving party's papers, (2) produce additional evidence showing the existence of a genuine issue for trial as provided in Rule 56(e), or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f)." *Id.* at 332–33, 333 n.3.

[50] *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Celotex*, 477 U.S. at 324; *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) and quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n.7 (5th Cir. 1992)).

[51] R. Doc. 220 at 32–35.

[52] *Id.* at 32–33, ¶ 97–100.

using the licensed compounds to develop the compounds claimed in the '436 Patent.[53] Count 7 alleges Tulane breached the duty of good faith and fair dealing owed under the Licensing Agreement.[54]

    A.    <u>Count 6 of Cytogel's Second Amended and Restated Counterclaims</u>

        1.    *The Government License defense does not shield Tulane and Dr. Zadina from liability for breach of the Licensing Agreement.*

Tulane and Dr. Zadina argue they cannot be held liable for breach of the Licensing Agreement because the federal government holds a license in the '958 and '578 Patents pursuant to the Bayh-Dole Act.[55] The material facts are not in dispute. Because the '958 and '578 Patents were developed in connection with a federal funding agreement, the patents are subject to a federal government license.[56] The Licensing Agreement specifies that Tulane's license to Cytogel is subject to the United States' retention of "certain rights in intellectual property funded in whole or part under any contract, grant or similar agreement with a Federal agency."[57]

Under the Bayh-Dole Act, when a nonprofit organization develops an invention in connection with a funding agreement and elects to retain title to the invention, "the Federal agency shall have a nonexclusive, nontransferable, irrevocable, paid-up license to practice or have practiced for or on behalf of the United States any subject invention throughout the world."[58] This "Government License" protects the public's interest in

---

[53] *Id.*
[54] *Id.* at 34–35, ¶ 106–10.
[55] R. Doc. 279-3 at 12–13.
[56] R. Doc. 279-4 at 2–3, ¶ 3–5; R. Doc. 305-1 at 2–3, ¶ 3–5.
[57] R. Doc. 279-1 at 6, ¶ 2.2.
[58] 35 U.S.C.A. § 202(c)(4).

"[i]nventions made under a Government contract[, which] are the product of expenditures from the public treasury in the course of a governmental function."[59]

The Bayh-Dole Act does not specify who may raise a Government License as a defense. "[C]ourts have recognized that the license may be raised by the Government as an affirmative defense when the Government is sued for patent infringement in the Court of Federal Claims."[60] Tulane and Dr. Zadina cite no cases in support of the proposition that a nongovernmental entity may raise the Government License in its own defense. In *Madey v. Duke University*,[61] the only case squarely addressing this issue, a district court concluded "the Government License created by the Bayh–Dole Act is designed to regulate the relationship between the Government and its funding recipients, but it would not be available to a private third party as the basis for a private right of action or private defense."[62] The *Madey* court cited cases concluding other portions of the Bayh-Dole Act created a private right of action.[63] The court found "nothing in the terms of the Bayh–Dole Act or the provisions incorporated into the federal funding agreements that reserves or retains a license for any private third party."[64] The court also noted that a separate statutory provision, 28 U.S.C. § 1498(a), creates an affirmative defense for private parties using a patent "for the United States," and, as a result, allowing private parties to invoke

---

[59] *Technical Dev. Corp. v. United States*, 220 Ct.Cl. 128, 597 F.2d 733, 745 (1979) (quoting *Mine Safety Appliances Co. v. United States*, 176 Ct.Cl. 777, 364 F.2d 385, 392 (1966)).
[60] *Madey v. Duke Univ.*, 413 F. Supp. 2d 601, 611 (M.D.N.C. 2006) (citing *Technical Dev. Corp.*, 597 F.2d at 745–46; *Technitrol, Inc. v. United States*, 194 Ct.Cl. 596, 440 F.2d 1362 (1971)).
[61] *Id.*
[62] *Id.* at 613.
[63] *Id.* at 612–13 (citing *Fenn v. Yale Univ.*, 393 F.Supp.2d 133, 141–42 (D.Conn.2004); *Gen–Probe, Inc. v. Center for Neurologic Study*, 853 F.Supp. 1215, 1217–18 (S.D.Cal.1993); *Platzer v. Sloan–Kettering Inst. for Cancer Research*, 787 F.Supp. 360, 364–65 (S.D.N.Y.1992), *aff'd*, 983 F.2d 1086 (Fed.Cir.1992)).
[64] *Id.* at 613.

the Government License defense would be duplicative of the defense in § 1498(a). The *Madey* court found "no basis to infer a duplicative Government License defense."[65]

This Court agrees with *Madey*'s interpretation of the Bayh-Dole Act. In this case, Tulane licensed rights to the '958 and '578 Patents to Cytogel subject to a Government License, but the United States was not a party to the Licensing Agreement.[66] The Court finds no support in the Bayh-Dole Act or in caselaw for the proposition that the Government License defense shelters a private party sued for breach of a patent licensing contract. In Count 6 of its Second Amended and Restated Counterclaims, Cytogel alleges Tulane breached the contract between Cytogel and Tulane, not that the United States infringed its rights.[67] The Government License defense does not protect Tulane and Dr. Zadina from liability under Count 6 of Cytogel's Second Amended and Restated Counterclaims. Tulane and Dr. Zadina are not entitled to judgment as a matter of law that the Government License defense shields them from liability.

> 2. *The terms of the Licensing Agreement are ambiguous as to the scope of the license Tulane granted Cytogel, and there are genuine issues of material fact as to the intent of the parties.*

The content of the Licensing Agreement is undisputed. Tulane granted Cytogel "an exclusive, worldwide license under the Patent Rights . . . to research, use make, have made, import, sell and offer for sale any Licensed Product(s) within the Field."[68] The "Patent Rights" are defined as the rights to the '958 and '578 Patents.[69] "Licensed Product" is defined as "any product incorporating, embodying, otherwise making use of

---

[65] *Id.* at 614.
[66] R. Doc. 279-1 at 6, ¶ 2.1–2.2.
[67] R. Doc. 220 at 33–34.
[68] R. Doc. 279-1 at 6, ¶ 2.1.
[69] *Id.* at 22 ("Appendix A").

or described in the patents within the Patent Rights."[70] The "Field" is defined as "the use of the Licensed Product for medical use in humans and animals."[71]

The parties nevertheless dispute the intent of the parties to the contract. "Interpretation of a contract is the determination of the common intent of the parties."[72] "Intent is an issue of fact which is to be inferred from all of the surrounding circumstances."[73] "A doubtful provision must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and other contracts of a like nature between the same parties."[74] "[I]f the language of a written agreement is on its face ambiguous, the courts can consider parol evidence and all of the surrounding circumstances in an effort to determine the true intent of the parties."[75]

In their Motion for Partial Summary Judgment as to Counts 5–13 for Failure to Establish an Essential Element of Each Claim, Tulane and Dr. Zadina incorporate by reference the arguments they make in their Motion for Partial Summary Judgment of Infringement.[76] In that motion, they argue "medical use for humans and animals" includes only clinical studies at or beyond United States Food and Drug Administration Phase II because Phase II is the earliest phase involving ill patients, not healthy volunteers.[77] Because Cytogel alleges Tulane breached the Licensing Agreement in connection with testing the '436 Patent compounds, and not during a clinical study in

---

[70] *Id.* at 5, ¶ 1.6.
[71] *Id.* at 5, ¶ 1.5.
[72] LA. CIV. CODE art. 2045.
[73] *Fleniken v. Entergy Corp.*, 790 So. 2d 64, 73 (La. App. 1 Cir. 2/16/01), *writ denied*, 793 So. 2d 1250 (La. 6/15/01), and *writ denied*, 793 So. 2d 1252 (La. 6/15/01).
[74] LA. CIV. CODE art. 2053.
[75] *Starke Taylor & Sons, Inc. v. Riverside Plantation*, 301 So. 2d 676, 679 (La. Ct. App. 1974).
[76] R. Doc. 279-3 at 13 n.6.
[77] R. Doc. 274-3 at 8–10.

Phase II or beyond, Tulane and Dr. Zadina argue Cytogel cannot establish Tulane breached the agreement.[78]

In opposition, Cytogel argues the Licensing Agreement grants it exclusive Patent Rights for preclinical and Phase I research.[79] The "Field" is defined as "the use of the Licensed Product for medical use."[80] Cytogel admits Tulane and Dr. Zadina's using the Licensed Product in connection with testing the '436 Patent compounds did not constitute medical use per se.[81] Nevertheless, Cytogel argues Tulane and Dr. Zadina violated the Licensing Agreement because their use of the Licensed Product to test the '436 Patent compounds constitutes "use for medical use," which falls within the scope of the Field.[82]

The contract does not define "medical use" or "research." The Court finds the terms of the contract are ambiguous regarding whether the license covers preclinical and Phase I studies. Genuine issues of material fact exist with respect to the meaning of the contractual provisions defining the scope of the license.[83] "[W]hen a contract is ambiguous, the trier of fact must resolve the factual issue of intent, and judgment on the pleadings or summary judgment is improper."[84] Summary judgment on Count 6 of Cytogel's Second Amended and Restated Counterclaims is not appropriate.[85]

---

[78] *Id.*
[79] R. Doc. 313 at 7.
[80] R. Doc. 279-1 at 5, ¶ 1.5.
[81] R. Doc. 313 at 7.
[82] *Id.*
[83] R. Doc. 313-1 at 4, ¶ 8.
[84] *Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177, 181 (5th Cir. 2007) (citing *Investors Syndicate of Am., Inc. v. City of Indian Rocks Beach*, 434 F.2d 871, 877–78 (5th Cir.1970); *Gertler v. City of New Orleans*, 2003-2131 (La. App. 4 Cir. 9/1/04), 881 So. 2d 792, 796, *writ denied*, 2004-2649 (La. 1/7/05), 891 So. 2d 687).
[85] In the instant motion and opposition, the parties raise arguments regarding whether Tulane breached the confidentiality provisions of the Licensing Agreement. R. Doc. 279-3 at 13; R. Doc. 305 at 11–14. The Court notes, in its Second Amended and Restated Counterclaims, Cytogel does not allege Tulane breached the confidentiality provisions of the Licensing Agreement. R. Doc. 220 at 33–34, ¶ 101–05. As a result, the Court does not address the parties' arguments regarding the confidentiality provisions.

B.    Counts 5 and 7 of Cytogel's Second Amended and Restated Counterclaims

Under Louisiana law, every contract includes an implicit covenant of good faith and fair dealing.[86] A claim for breach of this duty requires "more than mere bad judgment or negligence," but rather a showing of a "design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, . . . [prompted] by some interested or sinister motive."[87]

Cytogel's Second Amended and Restated Counterclaims are replete with allegations that Dr. Zadina and Tulane deceived and misled them, in violation of the Consulting Agreement and Licensing Agreement.[88] These counterclaims are based on allegations Dr. Zadina secretly used confidential information to compete with Cytogel, that he and Tulane used products exclusively licensed to Cytogel and continued to hide this use from Cytogel, and that they deliberately misled Cytogel into believing its intellectual property rights would be respected.[89] Cytogel states in interrogatory responses that "malice and ill motive may be inferred" from Tulane and Dr. Zadina's actions.[90] Tulane and Dr. Zadina argue this "bald assertion . . . is not sufficient to survive summary judgment."[91]

Inferring malice and ill motive from parties' actions falls squarely within the factfinder's role, and "[a] motion for summary judgment requiring a judicial

---

[86] LA. CIV. CODE art. 1983 ("Contracts must be performed in good faith."); *see also* LA. CIV. CODE art. 1997 ("An obligor in bad faith is liable for all the damages, foreseeable or not, that are a direct consequence of his failure to perform.").

[87] *Industrias Magromer Cueros y Pieles S.A. v. Louisiana Bayou Furs Inc.*, 293 F.3d 912, 922 (5th Cir. 2002) (quoting *Bond v. Broadway*, 607 So.2d 865, 867 (La.Ct.App.1992)).

[88] *See generally* R. Doc. 220.

[89] *Id.* at 19−28.

[90] R. Doc. 279-4 at 9, ¶ 33−36; R. Doc. 305-1 at 11, ¶ 33−36.

[91] R. Doc. 279-3 at 15.

determination of subject facts, such as motive, intent or knowledge, is rarely appropriate."[92]

The Court notes Tulane and Dr. Zadina do not move for summary judgment on Count 4, which is the underlying breach of contract claim for the breach of the duty of good faith and fair dealing alleged in Count 5. The Court has found genuine issues of material fact that preclude summary judgment on Count 6, which is the underlying breach of contract claim for Count 7. "[J]udicial determination of good-faith (or bad-faith) failure to perform a conventional obligation is always preceded by a finding that there was a failure to perform, or a breach of the contract."[93] The genuine issues of material fact as to the underlying breach of contract claims and disputes about the parties' motives preclude summary judgment on the claims for breach of the duty of good faith and fair dealing.

As a result, the Court denies Tulane and Dr. Zadina's Motion for Partial Summary Judgment for Failure to State the Essential Elements of a Claim as to Counts 5–7.[94]

II.     **With respect to Count 8 of Cytogel's Second Amended and Restated Counterclaims, there are genuine issues of material fact about whether Tulane, Dr. Zadina, and the VA misappropriated Cytogel's trade secrets, and movants have not established that the claim has prescribed.**

Cytogel brings Count 8 of its Second Amended and Restated Counterclaims, alleging misappropriation of trade secrets, against Tulane, Dr. Zadina, and the United States pursuant to LUTSA.[95] Cytogel alleges five trade secrets were misappropriated: Cytogel's research and development regarding Cyt-1010's commercial viability and fitness for human use, Cytogel's research on Cyt-1010's safety, data and information on solubility

---

[92] *Neuman v. Mauffray*, 1999-2297 (La. App. 1 Cir. 11/8/00), 771 So. 2d 283, 286.
[93] *Favrot v. Favrot*, 2010-0986 (La. App. 4 Cir. 2/9/11), 68 So. 3d 1099, 1110, *writ denied*, 2011-0636 (La. 5/6/11), 62 So. 3d 127.
[94] R. Doc. 279.
[95] R. Doc. 220 at 35.

issues with Cyt-1010, information on potential modifications to Cyt-1010's structure, and information about marketing and communicating with licensing partners.[96] Tulane and Dr. Zadina argue Cytogel has no evidence to support the existence of a trade secret, [97] and Cytogel's claim has prescribed.[98] The United States joins as to the Motion for Partial Summary Judgment for Failure to Establish an Essential Element of Each Claim,[99] but not as to the Motion for Partial Summary Judgment on peremption and prescription grounds.[100]

A.  <u>Tulane, Dr. Zadina, and the United States have not shown they are entitled to judgment as a matter of law that Cytogel did not own trade secrets.</u>

The parties dispute the facts material to Cytogel's claim for misappropriation of trade secrets. Tulane, Dr. Zadina, and the United States assert Cytogel does not and cannot distinguish between information it keeps confidential and trade secrets it owns.[101] Cytogel disputes this fact.[102] In its Second Amended and Restated Counterclaims, Cytogel specifies five different trade secrets that it alleges Dr. Zadina, Tulane, and the VA misappropriated.[103] Tulane, Dr. Zadina, and the United States dispute whether any of these are actually trade secrets.[104]

LUTSA defines a trade secret as "information, including a formula, pattern, compilation, program, device, method, technique, or process, that (a) derives independent economic value, actual or potential, from not begin generally known to and not being readily ascertainable by proper means by other persons who can obtain

---

[96] *Id.* at 35–36, ¶ 112.
[97] R. Doc. 279-3 at 16–20.
[98] R. Doc. 271 at 9–14.
[99] R. Doc. 279 at 1.
[100] R. Doc. 271 at 1.
[101] R. Doc. 279-4 at 6, ¶ 22, 23.
[102] R. Doc. 305-1 at 7–8, ¶ 22, 23.
[103] *Id.* at 35–36, ¶ 112.
[104] R. Doc. 279-4 at 6, ¶ 22, 23.

economic value from its disclosure or use, and (b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy."[105] "Whether something is a trade secret is a question of fact."[106]

Tulane and Dr. Zadina argue Cytogel has not identified the trade secrets at issue.[107] They cite excerpts from the deposition transcripts of Dean Maglaris, Cytogel's CEO, in which he defined trade secrets as anything Cytogel does "that creates new information about [its] technology and products" and stated trade secrets were in the "same category" as confidential information, and the two were "treated the same way."[108] Tulane and Dr. Zadina cite these deposition excerpts for the propositions that (1) "[a]ccording to Cytogel, anything Cytogel does that creates new information about the technology and the products Cytogel is working on is Cytogel's trade secret" and (2) "Cytogel does not separate and treat any particular information in its company as a trade secret."[109] Cytogel disputes these characterizations.[110]

The fact that Cytogel's CEO could not identify the legal difference between a trade secret and confidential information during a deposition does not undermine Cytogel's allegation that it owned trade secrets. Cytogel specifies five trade secrets it alleges Tulane and Dr. Zadina misappropriated. Disputed issues of fact remain with respect to whether Cytogel owns any trade secrets.

---

[105] LA. REV. STAT. § 51:1431(4).
[106] *CheckPoint Fluidic Sys. Int'l, Ltd. v. Guccione*, 888 F. Supp. 2d 780, 796 (E.D. La. 2012) (citing *Pontchartrain Med. Labs., Inc. v. Roche Biomedical Labs., Inc.*, 95-2260 (La. App. 1 Cir. 6/28/96), 677 So. 2d 1086, 1091; *United Group of Nat'l Paper Distribs., Inc. v. Vinson*, 27,739 (La. App. 2 Cir. 1/25/96), 666 So. 2d 1338, 1344, *writ denied*, 96-0714 (La. 9/27/96), 679 So. 2d 1358); *see also Lear Siegler, Inc. v. Ark-Ell Springs, Inc.*, 569 F.2d 286, 288–89 (5th Cir. 1978) ("The question of whether an item taken from an employer constitutes a "trade secret," is of the type normally resolved by a fact finder after full presentation of evidence from each side.") (citations omitted).
[107] R. Doc. 279-3 at 17.
[108] *Id.* at 17–18.
[109] R. Doc. 279-4 at 6, ¶ 22, 23.
[110] R. Doc. 305-1 at 7–8, ¶ 22, 23.

LUTSA does not require a corporation to maintain its trade secrets in greater secrecy than other confidential information. Rather, a trade secret must be "the subject of efforts that are reasonable under the circumstances to maintain its secrecy."[111] Even if Cytogel does not in practice distinguish between trade secrets and other confidential information, Cytogel may own trade secrets for purposes of LUTSA so long as it makes reasonable efforts to maintain their secrecy. Disputed issues of fact remain with respect to whether Cytogel protects its trade secrets.

Tulane and Dr. Zadina also argue Cytogel has not shown its trade secrets had economic value.[112] Cytogel has produced documentation and expert reports showing the costs it has incurred in developing Cyt-1010 and estimating the value of the development opportunities it alleges it lost as a result of Tulane and Dr. Zadina's alleged misappropriation.[113] Whether Cytogel's claimed trade secrets have independent economic value is a disputed question of fact. Tulane and Dr. Zadina have failed to establish there are no material facts in dispute with respect to Count 8.

B. <u>Because genuine issues of material fact exist with respect to when Cytogel learned or should have learned of Tulane, Dr. Zadina, and the United States' alleged misappropriation of trade secrets, Tulane, Dr. Zadina, and the United States are not entitled to summary judgment that Cytogel's claims have prescribed.</u>

The undisputed facts show on September 8, 2010, Tulane sent Cytogel an email stating Dr. Zadina had designed a "new family of peptides" and had filed the related Provisional Application.[114] As a result, Cytogel stopped working with Dr. Zadina.[115] On or

---

[111] La. Rev. Stat. § 51:1431(4)(b).
[112] R. Doc. 279-3 at 20.
[113] *See generally* R. Doc. 317. Tulane and Dr. Zadina do not argue that, if there were trade secrets, a reasonable jury could not find misappropriation.
[114] R. Doc. 271-4 at 5, ¶ 14, 16; R. Doc. 321-1 at 5, ¶ 14, 16.
[115] R. Doc. 271-4 at 5, ¶ 16; R. Doc. 321-1 at 6, ¶ 16.

around September 10, 2010, Dean Maglaris of Cytogel informed Tulane he believed Cytogel owned the compound claimed in the Provisional Application."[116] On November 22, 2011, Cytogel sent Tulane a letter asserting it had evidence Dr. Zadina "took vital and confidential information from Cytogel, . . . [and] develop[ed] a new molecule . . . based at least in part on the information that emerged from his consultancy with Cytogel."[117] The Provisional Application was incorporated into the related Patent Application,[118] which was published on December 20, 2012.[119]

The parties dispute the date on which the prescriptive period for Cytogel's LUTSA claim began. Actions under LUTSA are subject to a three-year prescriptive period that begins when "the misappropriation was discovered or by the exercise of reasonable diligence should have been discovered."[120] "[A] continuing misappropriation constitutes a single claim."[121]

Cytogel alleges Tulane and Dr. Zadina misappropriated five distinct trade secrets.[122] The Court first addresses whether the alleged trade secrets are subject to multiple prescriptive periods. Neither the Fifth Circuit nor Louisiana state courts have addressed which factual situations require courts to find there are multiple trade secret claims subject to different prescriptive periods under LUTSA. In *Gognat v. Ellsworth*[123], the Colorado Supreme Court addressed this question in the context of the Colorado Uniform Trade Secrets Act, which is substantially identical to LUTSA.[124] The *Gognat*

---

[116] R. Doc. 271-4 at 6, ¶ 19; R. Doc. 321-1 at 8, ¶ 19.
[117] R. Doc. 271-4 at 8, ¶ 23; R. Doc. 321-1 at 10, ¶ 23.
[118] R. Doc. 271-4 at 4, ¶ 7; R. Doc. 321-1 at 4, ¶ 7.
[119] R. Doc. 271-4 at 4, ¶ 9; R. Doc. 321-1 at 4, ¶ 9.
[120] La. Rev. Stat. § 51:1436.
[121] *Id.*
[122] *Id.* at 35–36, ¶ 112.
[123] 259 P.3d 497 (Co. 2011).
[124] *Compare* Colo. Rev. Stat. § 7-74-101 *et seq. with* La. Rev. Stat. § 51:1436 *et seq.*

court noted the difficulty of distinguishing between one trade secret subject to one prescriptive period and multiple related trade secrets subject to separate prescriptive periods.[125] The court held when multiple trade secrets are sufficiently related, they are subject to one prescriptive period.[126]

In this case, Cytogel alleges Tulane and Dr. Zadina misappropriated five trade secrets that arise from the Consulting Agreement with Dr. Zadina.[127] Tulane and Dr. Zadina do not present undisputed evidence that the trade secrets are sufficiently related to justify subjecting misappropriation claims to one prescriptive period. Some of the alleged trade secrets include highly technical information relating to testing and viability of pharmaceuticals.[128] There are material facts in dispute with respect to whether the alleged trade secrets should be subject to one or to multiple prescriptive periods.

Tulane and Dr. Zadina argue Cytogel was aware of the alleged misappropriation by the time of Maglaris' email of September 10, 2010, Cytogel's letter of November 22, 2011, or the publication of the Patent Application on December 20, 2012.[129] The Court has reviewed Cytogel's letter of November 22, 2011.[130] The letter at best indicates Cytogel was aware of misappropriation of some, but not all, of the trade secrets Cytogel alleges Plaintiffs misappropriated. Tulane and Dr. Zadina have not shown that it is undisputed that all of the prescriptive periods began on November 22, 2011.

---

[125] *Gognat*, 259 P.3d at 503 ("While the actual language of the statute may not classify a subsequent misappropriation of related trade secrets a single claim, the distinction between related trade secrets and the related pieces of proprietary information forming a single trade secret would appear to be subtle at best.").

[126] *Id.* at 504; *accord Intermedics, Inc. v. Ventritex, Inc.*, 822 F. Supp. 634, 657 (N.D. Cal. 1993) (holding trade secrets under a state statute substantially identical to LUTSA are subject to one prescriptive period when shared by the plaintiffs "with defendants during the same period and in connection with the same relationships and when the trade secrets concern related matter.").

[127] R. Doc. 220 at 35–36, ¶ 112.

[128] *Id.*

[129] R. Doc. 271-3 at 14.

[130] R. Doc. 271-13.

The Court has also reviewed the Patent Application.[131] It is undisputed patent applications are publicly available and put parties on notice of their contents.[132] It is disputed whether the technical contents of the Patent Application did or should have put Cytogel on notice of misappropriation of its trade secrets. Tulane and Dr. Zadina have failed to establish they are entitled to judgment as a matter of law that Count 8 of Cytogel's Second Amended and Restated Counterclaims has prescribed.

As a result, the Court denies Tulane and Dr. Zadina's Motion for Partial Summary Judgment for Failure to State the Essential Elements of a Claim[133] and their Motion for Partial Summary Judgment on Prescription Grounds[134] as to Count 8 of Cytogel's Second Amended and Restated Counterclaims.[135]

## III.      With respect to Count 9 of Cyotgel's Second Amended and Restated Counterclaims, Tulane is entitled to judgment as a matter of law.

The material facts with respect to Count 9 are undisputed. Drs. Zadina and Hackler executed an assignment of the Patent Application to Tulane and the VA on August 22, 2012.[136] Cytogel did not execute an assignment of the '436 Patent to Tulane or the VA.[137]

Cytogel brings Count 9 of its Second Amended and Restated Counterclaims against Tulane and the United States under Louisiana Civil Code articles 2299 and 2303.[138] Tulane moves for summary judgment on this claim.[139] Article 2299 provides that "[a]

---

[131] R. Doc. 271-15.

[132] *Tewari De-Ox Sys., Inc. v. Mountain States/Rosen, L.L.C.*, 637 F.3d 604, 612 (5th Cir. 2011) ("There can be no dispute that a published patent application, like a patent, is readily available – the United States Patent and Trademark Office and Google both allow free online searching published patent applications.").

[133] R. Doc. 279.

[134] R. Doc. 271.

[135] The Court denies Tulane and Dr. Zadina's Motion to Dismiss Cytogel's First Amended Counterclaims, R. Doc. 74, as to Count 8.

[136] R. Doc. 271-4 at 4, ¶ 10; R. Doc. 321-1 at 4, ¶ 10. Cytogel contests the validity of the assignment. R. Doc. 321-1 at 4, ¶ 10.

[137] R. Doc. 274-4 at 8, ¶ 29; R. Doc. 305-1 at 10, ¶ 29.

[138] R. Doc. 220 at 39.

[139] R. Doc. 279.

person who has received a payment or a thing not owed to him is bound to restore it to the person from whom he received it."[140] Under Article 2303, "[a] person who in bad faith received a payment or a thing not owed to him is bound to restore it with its fruits and products."[141] Article 2299 requires that the thing not owed must be restored to the person from whom it was received. Louisiana courts have held Article 2299 "is limited to the situation in which one person gives something of value to another because of a perceived obligation to that other, when in fact no obligation exists. It does not apply when a third party, who is not acting as the agent of either the giver or the receiver is the conduit."[142]

Louisiana Civil Code Article 2303 provides that, if the receipt was in bad faith, the receiver must restore not only the thing not owed, but also its fruits and products. This article does not create a cause of action in a third party. In this case, Cytogel alleges Tulane and the VA wrongfully received ownership rights in the '436 Patent from Drs. Hackler and Zadina.[143] Because Cytogel does not allege Tulane and the VA received anything from Cytogel, Articles 2299 and 2303 do not provide a cause of action to Cytogel.[144]

As a result, the Court grants Tulane's Motion for Partial Summary Judgment for Failure to State the Essential Elements of a Claim as to Count 9 of Cytogel's Second Amended and Restated Counterclaims.[145]

---

[140] LA. CIV. CODE art. 2299.

[141] LA. CIV. CODE art. 2303.

[142] *Soileau v. ABC Ins. Co.*, 2002-1301 (La. App. 3 Cir. 3/5/03), 844 So. 2d 108, 110, *writ denied*, 2003-1558 (La. 10/3/03), 855 So. 2d 313 (internal bracket omitted); *see also Stewart v. Ruston Louisiana Hosp. Co., LLC*, No. CV 3:14-0083, 2016 WL 1715192, at *9 (W.D. La. Apr. 27, 2016) (finding Article 2299 "inapplicable" because the defendants "did not receive any payment whatsoever from Plaintiffs").

[143] R. Doc. 220 at 39.

[144] Article 2300 states, "A thing is not owed when it is paid or delivered for the discharge of an obligation that does not exist." LA. CIV. CODE art. 2300. Cytogel does not allege that Drs. Hackler and Zadina assigned their rights in the '436 Patent in discharge of a non-existent obligation. Cytogel does not, and cannot, establish that the rights to the '436 patent were a "thing not owed" within the meaning of Article 2300. Cytogel cites *Equilease v. Smith*, 588 F.2d 919 (5th Cir. 1979), for the proposition that the precursor to Article 2299 was "often applied in cases of third party payments." *Id.* (citations omitted). Even if this applied to Article 2299, Cytogel has not shown the rights to the '436 Patent are a "thing not owed."

[145] R. Doc. 279.

**IV.    With respect to Count 10 of Cytogel's Second Amended and Restated Counterclaims, there are genuine issues of material fact about whether Tulane and Dr. Zadina engaged in unfair trade practices, and movants have not established they are entitled to summary judgment.**

Cytogel brings Count 10 of its Second Amended and Restated Counterclaims against Tulane and Dr. Zadina pursuant to LUTPA.[146]

**A.    Tulane and Dr. Zadina have not met their burden of showing there are no disputed facts with respect to whether they engaged in unfair trade practices.**

The facts material to Count 10 are disputed. Cytogel alleges Tulane, the VA, and Dr. Zadina misled Cytogel into believing the '436 Patent compounds would be recognized as Cytogel's.[147] Cytogel alleges it shared with Tulane preliminary data from a Cytogel study that contained "confidential and proprietary" information.[148] It alleges that, shortly thereafter, Counterclaim-Defendants revised their business plan for the '436 Patent compounds to refer to these studies and shared the business plan drafts with a potential licensing or funding partner.[149] Cytogel also alleges Tulane, the VA, and Dr. Zadina "consistently indicated" to it that they were "on board" with moving forward the collaboration between Tulane, the VA, and Cytogel, but instead granted Mirata Pharmaceuticals, L.L.C. an exclusive license.[150]

Tulane and Dr. Zadina dispute each of these facts. They contest Cytogel's use of the word "mislead" in describing their interactions with it.[151] They assert the allegedly proprietary document Cytogel shared did not include confidential information.[152] Tulane

---

[146] On September 17, 2018, the Court dismissed Count 10 as to the United States. R. Doc. 297.
[147] R. Doc. 305-1 at 33, ¶ 103; R. Doc. 373-1 at 82, ¶ 103.
[148] R. Doc. 305-1 at 34, ¶ 109; R. Doc. 373-1 at 85, ¶ 109.
[149] R. Doc. 305-1 at 34, ¶ 110–11; R. Doc. 373-1 at 85–87, ¶ 110–11.
[150] R. Doc. 305-1 at 35, ¶ 116–17; R. Doc. 373-1 at 90–91, ¶ 116–17.
[151] R. Doc. 373-1 at 82, ¶ 103.
[152] *Id.* at 85–87, ¶ 109–11.

and Dr. Zadina also allege they consistently indicated to Cytogel that they planned to collaborate on the '436 Patent compounds.[153]

Determining what constitutes an unfair trade practice requires a case-by-case analysis.[154] There must be an element of "fraud, misrepresentation, deception, or other unethical conduct."[155] In its Second Amended Counterclaims, Cytogel alleges Plaintiffs' "long-term and concerted attempt to conceal their misconduct and delay its discovery by Cytogel" is the basis for its unfair trade practices claim.[156] Tulane and Dr. Zadina argue there is no allegation of a deceptive practice. They base their argument on the fact that Cytogel's expert witness Dr. Gregory K. Bell does not specifically refer to LUTPA or unfair trade practices in his expert report.[157]

The parties dispute whether Plaintiffs misled Cytogel and shared its proprietary information with third parties.[158] The Court finds there are genuine issues of material fact with respect to whether Tulane and Dr. Zadina engaged in unfair trade practices.

As with Counts 5 and 7 of Cytogel's Second Amended and Restated Counterclaims, which involve the duty of good faith and fair dealing, determining whether Tulane and Dr. Zadina engaged in fraud, misrepresentation, deception, or other unethical conduct is an issue best left to the factfinder.[159]

---

[153] *Id.* at 90, ¶ 116.
[154] *Cheramie Servs., Inc. v. Shell Deepwater Prod., Inc.*, 2009-1633 (La. 4/23/10), 35 So. 3d 1053, 1059.
[155] *Tubos de Acero de Mexico, S.A. v. Am. Int'l Inv. Corp.*, 292 F.3d 471, 480 (5th Cir. 2002) (quoting *Omnitech Intern., Inc. v. Clorox Co.*, 11 F.3d 1316, 1332 (5th Cir.1994)).
[156] R. Doc. 220 at 41, ¶ 138.
[157] R. Doc. 279-4 at 8, ¶ 30.
[158] R. Doc. 305-1 at 33–35, ¶ 103–17; R. Doc. 373-1 at 82–90, ¶ 103–17.
[159] *See Neuman*, 771 So.2d at 286.

**B.** Tulane and Dr. Zadina have not established Count 10 of Cytogel's Second Amended and Restated Counterclaims has prescribed because LUTPA claims are subject to the continuing tort doctrine.

Tulane and Dr. Zadina argue Count 10 of Cytogel's Second Amended and Restated Counterclaims has prescribed. The material facts are in dispute. In its Second Amended and Restated Counterclaims, Cytogel argues Dr. Zadina and Tulane's tort continued into 2016,[160] less than one year before Cytogel first filed its Counterclaims.[161] Tulane and Dr. Zadina contest the factual basis for this allegation.[162]

LUTPA states actions alleging unfair trade practices "shall be prescribed by one year running from the time of the transaction or act which gave rise to this right of action."[163] The statute does not mention continuing violations. In *Tubos de Acero*,[164] the Fifth Circuit held, despite the statutory language, that the period was peremptive, but the peremption period begins at the end of a continuing violation.[165] In 2008, the Louisiana Supreme Court, in *Miller v. Conagra, Inc.*, explicitly refrained from deciding whether the period is prescriptive or peremptive.[166] The lower court in *Miller* had found a continuing violation; the Louisiana Supreme Court reversed, finding, based on the facts of the case, that there was no continuing violation.[167]

---

[160] R. Doc. 220 at 41, ¶ 136.

[161] R. Doc. 6.

[162] R. Doc. 321-1 at 21, ¶ 28; R. Doc. 367-1 at 42, ¶ 28.

[163] La. Rev. Stat. § 51:1409(E) (2006). The statute has since been amended. 2018 La. Acts 143 (Act 337).

[164] 292 F.3d 471 (5th Cir. 2002).

[165] *Id.* at 481–82 (citing *Benton, Benton & Benton v. La. Pub. Facilities Auth.*, 95-1367 (La. App. 1 Cir. 4/4/96), 672 So. 2d 720, 723, *writ denied*, 96-1445 (La. 9/13/96), 679 So. 2d 110; *Capitol House Preservation Co. v. Perryman Consultants, Inc.*, 98-1514 (La. App. 1 Cir. 12/10/98), 725 So. 2d 523; *Fox v. Dupree*, 633 So. 2d 612, 614 (La. Ct. App. 1993), *writ denied*, 635 So. 2d 233 (La. 1994)).

[166] *Miller v. Conagra, Inc.*, 2008-0021 (La. 9/8/08), 991 So. 2d 445, 456.

[167] *Id.*

The Fifth Circuit's decision in *Tubos* has been criticized by Louisiana appellate courts.[168] In their reply memorandum, Tulane and Dr. Zadina urge this Court to decline to follow *Tubos*.[169] Because the Louisiana Supreme Court has not ruled squarely on the issue, this Court is bound by the holding in *Tubos* that LUTPA claims are subject to the peremptive period, but the continuing violation doctrine does apply.[170]

The Court finds the scope, duration, and end date of the alleged continuing unfair trade practices are disputed questions of fact.

As a result, the Court denies Tulane and Dr. Zadina's Motion for Partial Summary Judgment for Failure to State the Essential Elements of a Claim[171] and their Motion for Partial Summary Judgment on Prescription Grounds[172] as to Count 10.[173]

## V.  With respect to Count 11 of Cytogel's Second Amended and Restated Counterclaims, Cytogel has failed to establish Tulane improperly influenced others not to deal with Cytogel.

Cytogel brings Count 11 of its Second Amended and Restated Counterclaims against Tulane for tortious interference with business relations, alleging Tulane has "with

---

[168] *See, e.g.*, *Glod v. Baker*, 2004-1483 (La. App. 3 Cir. 3/23/05), 899 So. 2d 642, 649, writ denied, 2005-1574 (La. 1/13/06), 920 So. 2d 238 ("The cases upon which the Federal Fifth Circuit based *Tubos* come entirely from the Louisiana First Circuit Court of Appeal[,] . . . [which] has made a jurisprudential commitment to a strict definition of peremption embodied in the Civil Code and manifested in its consistent decisions barring use of the continuing violation doctrine to suspend peremption.").

[169] R. Doc. 367 at 11–12.

[170] *See CheckPoint Fluidic Sys. Int'l, Ltd. v. Guccione*, 888 F. Supp. 2d 780, 792 (E.D. La. 2012) ("This Court is therefore bound by the Fifth Circuit's holding that La. R.S. 51:1409(E) is a peremptive period, but it does not begin to run until a continuing violation ceases.").

In May 2018, the Louisiana legislature changed the language of the statute to clarify violations are subject to "a liberative prescription" of one year. 2018 La. Sess. Law Serv. Act 337. The accompanying legislative history sheds no light on the purpose of the amendment. The Court notes the possibility the legislature meant to resolve the issue and announce LUTPA claims are subject to liberative prescription, not peremption. The Court finds whether LUTPA claims are subject to a prescriptive period of one year or a peremptive period of one year that accrues at the end of a continuing tort, there is a genuine issue of material fact as to when the prescription or peremption period began.

[171] R. Doc. 279.

[172] R. Doc. 271.

[173] The Court denies Tulane and Dr. Zadina's Motion to Dismiss Cytogel's First Amended Counterclaims, R. Doc. 74, as to Count 10.

malice and ill will propounded false distinctions between the compounds disclosed in the '436 Patent . . . and Cytogel's compounds" in order to "prevent others from dealing with Cytogel."[174]

The material facts are undisputed. In discovery, Cytogel was unable to identify any third party with which Tulane prevented Cytogel from dealing.[175]

Louisiana Civil Code Article 2315 authorizes recovery for damages in delictual actions.[176] "The Louisiana Supreme Court has recognized a cause of action arising under article 2315 for tortious interference with business."[177] In *Dussouy v. Gulf Coast Investment Corp.*,[178] the Fifth Circuit explained this cause of action:

> An individual, regardless of his motive, has an absolute right to refuse to deal with another. The right to influence others not to deal, however, is not as broad. In that situation, Louisiana law protects the businessman from "malicious and wanton interference," permitting only interferences designed to protect a legitimate interest of the actor.[179]

The Fifth Circuit stated the plaintiff must show the defendant "improperly influenced others" not to deal with the plaintiff, that "the interference was improper," and that "malice is a necessary element of the cause of action."[180] This is a "very limited form of recovery" protecting businesspersons from "malicious and wanton interference."[181] "It is not enough to allege that a defendant's actions affected plaintiff's business interests; the

---

[174] R. Doc. 220 at 43, ¶ 144.
[175] R. Doc. 279-4 at 8, ¶ 31–32, R. Doc. 305-1 at 11, ¶ 31–32.
[176] LA. CIV. CODE art. 2315(A) ("Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it.").
[177] *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 601 (5th Cir. 1981) (citing *Graham v. St. Charles St. Railroad*, 47 La.Ann. 1656, 18 So. 707 (1895)).
[178] *Id.*
[179] *Id.* (citations omitted).
[180] *Id.* at 602 (citations omitted).
[181] *Junior Money Bags, Ltd. v. Segal*, 970 F.2d 1, 10 (5th Cir. 1992) (citing *id.* at 601).

plaintiff must allege that the defendant actually prevented the plaintiff from dealing with a third party."[182]

Cytogel argues because Tulane granted Mirata Pharmaceuticals, L.L.C. an exclusive license for the '436 Patent compounds, Tulane "foreclose[ed] the ability of Cytogel to deal with third parties regarding the '436 compounds."[183] Cytogel presents no evidence Tulane or Dr. Zadina actually improperly influenced any third party to keep the third party from dealing with Cytogel.

As a result, the Court **GRANTS** Tulane and Dr. Zadina's Motion for Partial Summary Judgment for Failure to State the Essential Elements of a Claim as to Count 10.[184] The Court **DENIES AS MOOT** Tulane and Dr. Zadina's Motion for Partial Summary Judgment on Prescription Grounds as to Count 10.[185]

**VI.**      **With respect to Count 12 of Cytogel's Second Amended and Restated Counterclaims, Cytogel has failed to establish either Tulane or Dr. Zadina engaged in tortious interference with contractual relations, and the claim has prescribed.**

Cytogel brings Count 12 of its Second Amended and Restated Counterclaims against Tulane and Dr. Zadina for tortious interference with business relations.[186] Cytogel alleges two instances of tortious interference.[187] Cytogel first alleges Dr. Zadina intentionally interfered with the contractual relationship between Cytogel and Tulane by causing Tulane to breach its obligations under the License Agreement.[188] Second, Cytogel

---

[182] *Mountain States Pipe & Supply Co. v. City of New Roads, La.*, No. CIV.A. 12-2146, 2013 WL 3199724, at *2 (E.D. La. June 21, 2013) (citing *Nowling v. Aero Servs. Int'l Inc.*, 752 F.Supp. 1302, 1312 n. 7 (E.D.La.1990); *Ustica Enters., Inc. v. Costello*, 434 So.2d 137, 140 (La.Ct.App.1983)).
[183] R. Doc. 305 at 28.
[184] R. Doc. 279.
[185] R. Doc. 271.
[186] R. Doc. 220 at 44–46, ¶ 148–161.
[187] *Id.*
[188] *Id.*

alleges Tulane and the VA intentionally interfered with Dr. Zadina's Consulting Agreement with Cytogel by causing him to assign his interest in the '436 Patent to them.[189]

A.    <u>Dr. Zadina is entitled to judgment on Count 12 as a matter of law because Cytogel presents no evidence that he was a corporate officer of Tulane or that he owed Cytogel a duty.</u>

The facts material to Cytogel's tortious interference with contract claim against Dr. Zadina are not in dispute. Tulane and Cytogel were parties to the Licensing Agreement.[190] Dr. Zadina did not exceed the scope of his authority as a Tulane employee, and he did not knowingly commit any act adverse to the interests of Tulane.[191] Cytogel has neither alleged Dr. Zadina is a corporate officer of Tulane nor specified any duty Dr. Zadina owed to Cytogel as a result of his employment with Tulane.

Claims for tortious interference with contract are delictual actions under Louisiana Civil Code Article 2315.[192] In *9 to 5 Fashions, Inc. v. Spurney*,[193] the Louisiana Supreme Court recognized for the first time an action under Article 2315 for tortious interference with contract, and limited the claim to "a corporate officer's duty to refrain from intentional and unjustified interference with the contractual relation between his employer and a third person."[194] The elements of a tortious interference with contract claim are:

> (1) the existence of a contract or a legally protected interest between the plaintiff and the corporation; (2) the corporate officer's knowledge of the contract; (3) the officer's intentional inducement or causation of the corporation to breach the contract or his intentional rendition of its performance impossible or more burdensome; (4) absence of justification on the part of the officer; (5) causation of damages to the plaintiff by the

---

[189] *Id.*

[190] R. Doc. 1 at 6, ¶ 20; R. Doc. 220 at 9, ¶ 17.

[191] R. Doc. 279-4 at 9, ¶ 37–38, R. Doc. 305-1 at 12, ¶ 37–38.

[192] LA. CIV. CODE art. 2315(A) ("Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it.").

[193] 538 So. 2d 228 (La. 1989).

[194] *Id.* at 234.

breach of contract or difficulty of its performance brought about by the officer.[195]

The Fifth Circuit has consistently recognized the limited nature of claims for tortious interference with contract claim under Louisiana law.[196] The Fifth Circuit has interpreted *9 to 5* and subsequent Louisiana appellate court cases as limiting such actions to situations when there was a "narrow, individualized duty between the plaintiff and the alleged tortfeasor."[197]

In this case, Cytogel has failed to establish Dr. Zadina was a corporate officer of Tulane. Cytogel has also failed to establish that Dr. Zadina owed Cytogel a narrow, individualized duty to refrain from unjustified interference with Cytogel's contractual relations. As a matter of law, Cytogel cannot show that Dr. Zadina tortiously interfered with the Licensing Agreement between Cytogel and Tulane.

**B.** **Tulane is entitled to judgment on Count 12 as a matter of law because Cytogel presents no evidence that Tulane had a duty not to interfere in the Consulting Agreement.**

The facts material to Cytogel's tortious interference with contract claim against Tulane are not in dispute. Dr. Zadina and Cytogel were parties to the Consulting Agreement.[198] Cytogel has not specified any duty Tulane owed to Cytogel as a result of Dr. Zadina's Consulting Agreement.

---

[195] *Id.*

[196] *See, e.g., Petrohawk Properties, L.P. v. Chesapeake Louisiana, L.P.*, 689 F.3d 380, 395 (5th Cir. 2012); *Egorov, Puchinsky, Afanasiev & Juring v. Terriberry, Carroll & Yancey*, 183 F.3d 453 (5th Cir.1999); *American Waste & Pollution Control Co. v. Browning–Ferris, Inc.*, 949 F.2d 1384 (5th Cir.1991).

[197] *Petrohawk*, 689 F.3d at 395–96 (citing *Neel v. Citrus Lands of La., Inc.*, 629 So.2d 1299, 1301 (La.Ct.App.1993); *MD Care, Inc. v. Angelo*, 672 So.2d 969, 973 (La.Ct.App.1996)). Cytogel cites *Neel* for the proposition that Louisiana law "should recognize something 'far broader'" than the facts of *9 to 5*. R. Doc. 305 at 28. Absent a contrary ruling by the Louisiana Supreme Court, this Court is bound by the Fifth Circuit's interpretation of Louisiana law in *Petrohawk*.

[198] R. Doc. 1 at 6–9, ¶ 24–36; R. Doc. 220 at 10, ¶ 19.

Cytogel cannot show Tulane bore Cytogel any duty analogous to "a corporate officer's duty to refrain from intentional and unjustified interference with the contractual relation between his employer and a third person."[199] As a matter of law, Cytogel cannot show that Tulane tortiously interfered with the Consulting Agreement between Cytogel and Dr. Zadina.

C.    Cytogel's claims for tortious interference with contractual relations has prescribed.

The facts material to prescription of Count 12 are also undisputed. Cytogel alleges Tulane intentionally interfered with Dr. Zadina's Consulting Agreement with Cytogel by causing him to assign his interest in the '436 Patent to them.[200] This occurred on August 22, 2012.[201] Cytogel alleges Dr. Zadina intentionally interfered with Tulane's obligations under the Licensing Agreement by using compounds licensed to Cytogel to test the '436 Patent.[202] The parties do not specify the date on which the testing occurred, but Cytogel alleges this occurred prior to the publication of the '436 Patent.[203] The Patent Application was published on December 20, 2012,[204] and the '436 Patent issued on May 6, 2014.[205]

"Delictual actions are subject to a liberative prescription of one year . . . run[ning] from the day injury or damage is sustained."[206] The prescriptive period for delictual actions is subject to the continuing tort doctrine, and "in order to allege a continuing tort,

---

[199] *9 to 5*, 538 So. 2d at 234.

[200] R. Doc. 220 at 46, ¶ 159.

[201] R. Doc. 271-4 at 4, ¶ 10; R. Doc. 321-1 at 4, ¶ 10. Cytogel contests the validity of the assignment. R. Doc. 321-1 at 4, ¶ 10.

[202] R. Doc. 220 at 44, ¶ 151.

[203] R. Doc. 220 at 23, ¶ 63 ("The '436 Patent also contains data for experiments directly comparing the claimed compound to compounds claimed in the licensed '958 at '578 Patents.")

[204] R. Doc. 271-4 at 4, ¶ 9; R. Doc. 321-1 at 4, ¶ 9.

[205] R. Doc. 1 at 11–12, ¶ 43–47; R. Doc. 220 at 21, ¶ 57.

[206] LA. CIV. CODE art. 3492.

. . . a plaintiff must allege both continuous action and continuous damage."[207] Neither Dr. Zadina's assignment of the '436 Patent to Tulane nor his using the '958 at '578 Patent compounds to develop the '436 Patent constitute continuous action. Both events occurred well over one year before Cytogel filed its Counterclaims on September 7, 2016.[208] Cytogel's claims for tortious interference with contractual relations have prescribed.

As a result, the Court grants Tulane and Dr. Zadina's Motion for Partial Summary Judgment for Failure to State the Essential Elements of a Claim[209] and, alternatively, grants their Motion for Partial Summary Judgment on Prescription Grounds[210] as to Count 12.

**VII.    Because Count 13 of Cytogel's Second Amended and Restated Counterclaims is based on the same facts as its other counterclaims, Tulane is entitled to judgment as a matter of law.**

Cytogel brings Count 13 of its Second Amended and Restated Counterclaims for unjust enrichment under Louisiana Civil Code Article 2298.[211] Cytogel bases this claim on the same facts as its other claims[212] and brings this claim in the alternative.[213]

To support a claim for unjust enrichment under Louisiana law, a plaintiff must show five elements: (1) there must be an enrichment; (2) there must be an impoverishment; (3) there must be a connection between the enrichment and the resulting impoverishment; (4) there must be an absence of "justification" or "cause" for the enrichment and impoverishment; and (5) there must be no other remedy at law

---

[207] *Thomas v. State Employees Group Benefits Program*, App. 1 Cir.2006, 934 So.2d 753, 2005-0392 (La.App. 1 Cir. 3/24/06).
[208] R. Doc. 6.
[209] R. Doc. 279.
[210] R. Doc. 271.
[211] R. Doc. 220 at 46.
[212] *Id.* at ¶ 162.
[213] *Id.* at ¶ 163.

available.[214] "The mere fact that a plaintiff does not successfully pursue another available remedy does not give the plaintiff the right to recover under the theory of unjust enrichment.'"[215] "This is because [t]he unjust enrichment remedy is only applicable to fill a gap in the law where no express remedy is provided."[216] "It is not the success or failure of the other causes of action, but rather the existence of other cause of action, that determine whether unjust enrichment can be applied."[217] Unjust enrichment claims cannot be maintained in the alternative.[218]

Cytogel brings its unjust enrichment claim under the same facts as its thirteen other counterclaims. Unjust enrichment is inapplicable because the law provides other express remedies. Cytogel cannot maintain its unjust enrichment claim in the alternative.

As a result, the Court grants Tulane's Motion for Partial Summary Judgment for Failure to State the Essential Elements of a Claim as to Count 13.[219] The Court denies as moot Tulane's Motion for Partial Summary Judgment on Prescription Grounds as to Count 13.[220]

---

[214] *See JP Mack Indus. LLC*, 970 F. Supp. 2d at 520-21 (citing *Carriere v. Bank of Louisiana*, 95-3058 (La. 12/13/96), 702 So. 2d 648).

[215] *Walters v. MedSouth Record Mgmt., LLC*, 2010-0351 (La. 6/4/10), 38 So. 3d 241, 242 (La. 2010) (per curiam).

[216] *Perez v. Utility Constructors, Inc.*, 2016 WL 5930877, at *1 (E.D. La. Oct. 12, 2016) (internal citations and quotations omitted).

[217] *Zaveri v. Condor Petroleum Corp.*, 27 F. Supp. 3d 695, 702 (W.D. La. 2014) (quoting *Garber v. Badon & Rainer*, 2007-1497 (La. App. 3 Cir. 4/2/08), 981 So. 2d 92, 100, *writ denied*, 2008-1154 (La. 9/19/08), 992 So. 2d 943); *see also Carriere v. Bank of Louisiana*, 95-3058 (La. 12/13/96), 702 So. 2d 648, 673).

[218] Cytogel cites several cases from other sections of this Court to argue it may maintain an unjust enrichment claim as an alternative claim. R. Doc. 305 at 30 (citing *Perez v. Util. Constructors*, No. 15-4675, 2016 WL 5930877 (E.D.La. Oct. 12, 2016); *McCullum v. McAlister's Corp. of Mississippi*, No. 08-5050, 2010 WL 1489907 (E.D.La. April 13, 2010); *Mayer v. Lamarque Ford, Inc.*, No. 00-1325, 2001 WL 175232 (E.D. La. February 16, 2001)). These cases are contrary to holdings of the Louisiana Supreme Court, *see Walters*, 38 So.3d at 242, and the Fifth Circuit, *Ferrara Fire Apparatus, Inc. v. JLG Industries, Inc.*, 581 Fed.Appx. 440, 444 (5th Cir. 2014), and their abrogation was recognized in *Andretti Sports Mktg. Louisiana, LLC v. NOLA Motorsports Host Comm., Inc.*, No. CV 15-2167, 2015 WL 13540096, at *8 (E.D. La. Dec. 2, 2015).

[219] R. Doc. 279.

[220] R. Doc. 271. Tulane and Dr. Zadina do not argue the unjust enrichment claim itself has prescribed. Rather, they argue Cytogel cannot bring unjust enrichment to circumvent prescription for its other claims.

## CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Plaintiff the Administrators of the Tulane Educational Fund is entitled to judgment in its favor and against Defendant Cytogel Pharma, LLC, on Counts 9 and 11–13 of Defendant's Second Amended and Restated Counterclaims. Counterclaim-Defendant Dr. James E. Zadina is entitled to judgment in his favor and against Cytogel Pharma, LLC, on Count 12 of Defendant's Second Amended and Restated Counterclaims.[221]

**IT IS FURTHER ORDERED** that the Motion to Dismiss Counts 8 and 10–13 of Defendant Cytogel Pharma, LLC's First Amended Counterclaims on Prescription Grounds, filed by the Administrators of the Tulane Educational Fund and Dr. Zadina, be and hereby is **DENIED** as to Counts 8 and 10 of Defendant's Second Amended and Restated Counterclaims and **DENIED AS MOOT** as to Counts 11–13 of Defendant's Second Amended and Restated Counterclaims.[222]

**IT IS FURTHER ORDERED** that the Motion to Dismiss Cytogel's First Amended Counterclaims, filed by Tulane and Dr. Zadina pursuant to Rule 12(b)(6)[223] of the Federal Rules of Civil Procedure, in which the United States joins, be and hereby is **DENIED IN PART AS MOOT** as to Counts 5–8, Count 9 as against the Administrators of the Tulane Educational Fund, and Counts 10–13.[224]

---

The Court need not address this argument because the Court does not hold that all of Cytogel's other tort claims have prescribed.

[221] R. Docs. 271, 279.

[222] R. Doc. 74.

[223] The Court denied the portion of the motion requesting dismissal of Counts 2 and 3 of Cytogel's First Amended and Restated Counterclaims in its Order and Reasons of September 17, 2018. R. Doc. 294.

[224] R. Doc. 75. The Court will address in a separate order the remaining portions of the order, in which Tulane, Dr. Zadina, and the United States move to dismiss Counts 1 and 4, Count 9 as against the United States, Cytogel's request for injunctive relief, and Cytogel's Third and Fourth Affirmative Defenses, pursuant to Rule 12(b)(6).

**IT IS FURTHER ORDERED** that the Motion to Dismiss Counts 1, 8, 9, and 14 of Cytogel's First Amended Counterclaims, filed by the United States, be and hereby is **DENIED IN PART AS MOOT** as to Count 8.[225]

New Orleans, Louisiana, this 25th day of October, 2018.

*Susie Morgan*

**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[225] R. Doc. 301. The Court will address in a separate order the remaining portions of the order, in which the United States moves to dismiss Counts 1, 9, and 14 of Cytogel's Second Amended and Restated Counterclaims.