UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| THE UNITED STATES and THE ADMINISTRATORS OF THE TULANE EDUCATIONAL FUND, **Plaintiffs** | CIVIL DOCKET |
|---|---|
| VERSUS | NO. 16-13987 |
| CYTOGEL PHARMA, LLC, **Defendant** | SECTION: "E"(1) |

## ORDER AND REASONS

Before the Court are a Motion for Partial Summary Judgment on Count 1 of the Complaint, filed by Plaintiffs the Administrators of the Tulane Educational Fund ("Tulane") and the United States of America,[1] and a Motion for Partial Summary Judgment on the Consulting Agreement, filed by Defendant Cytogel Pharma, LLC.[2] The motions are opposed.[3] For the reasons that follow, the motions are **DENIED**. The Court also **DENIES** Tulane, Dr. Zadina, and the United States' Contingent Motion for Judgment as a Matter of Law on Counts 1 and 2 of the Complaint and Counts 1 and 14 of Cytogel's Second Amended and Restated Counterclaims.[4]

## BACKGROUND[5]

In the 1990s, Dr. Zadina and his colleagues at Tulane University researched and developed opioid compounds related to endomorphins, which are opioid peptides found naturally in the human body.[6] Based on their research, Tulane obtained two patents, U.S.

---

[1] R. Doc. 270.
[2] R. Doc. 276.
[3] R. Docs. 307, 319, 325.
[4] R. Doc. 273. This motion is contingent on the Court's granting either Dr. Zadina's Motion for Partial Summary Judgment on Counts 1, 4, 5, 9, 10, 12, and 14 of Cytogel's Second Amended and Restated Counterclaims, R. Doc. 223, or Plaintiffs' instant Motion for Partial Summary Judgment on Count 1 of the Complaint, R. Doc. 270. The Court denied Dr. Zadina's motion on September 17, 2018, R. Doc. 295, and denies Plaintiffs' motion herein.
[5] The facts in this section are undisputed unless noted otherwise.
[6] R. Doc. 1 at 4–5, ¶ 14–16; R. Doc. 220 at 9, ¶ 16.

1

Patent Nos. 5,885,958 ("the '958 Patent") and 6,303,578 ("the '578 Patent"), claiming these compounds.[7] On December 1, 2003, Tulane licensed the patents to Cytogel.[8]

After Tulane and Cytogel signed the Licensing Agreement, Dr. Zadina, who was an employee of Tulane and the Department of Veterans Affairs ("VA"), began performing consulting work for Cytogel.[9] On November 1, 2006, Cytogel and Dr. Zadina executed a contract entitled "Consulting Agreement."[10] Dr. Zadina agreed to "provide advice and consultation on topics related to the development of opioid compounds for clinical application."[11] The Consulting Agreement included the following provision relating to ownership of intellectual property:

> 8. . . . Consultant acknowledges that any inventions, processes, methods, techniques, formulae, compounds, designs, improvements, writings, tradenames, trademarks, copyrights, patents, trade secrets and other intellectual properties that may result or emerge from materials or information provided by Cytogel, its employees or other consultants, or on the premises of Cytogel, or as a result of the consulting process, shall remain the sole and exclusive property of and for the benefit of Cytogel.[12]

Dr. Zadina advised Cytogel on the development of Cyt-1010, a synthetic opioid peptide covered by the '958 and '587 Patents,[13] for commercial use as an analgesic.[14] Cytogel alleges Dr. Zadina accessed confidential data and information relating to Cyt-1010 and used this information to further his own secret work on the development of compounds that would compete directly with Cyt-1010.[15]

---

[7] R. Doc. 1 at 5–6, ¶ 17–19; R. Doc. 220 at 9, ¶ 16.
[8] R. Doc. 1 at 6, ¶ 20; R. Doc. 220 at 9, ¶ 17.
[9] R. Doc. 1 at 6–9, ¶ 24–36; R. Doc. 220 at 10, ¶ 19.
[10] R. Doc. 223-3.
[11] R. Doc. 223-3 at 2, ¶ 1.
[12] *Id.* at 3–4, ¶ 7–8.
[13] The parties' filings do not clarify whether Cyt-1010 is covered by the '958 Patent or both the '958 and '587 Patents.
[14] R. Doc. 1 at 5, 6, ¶ 16, 20–21; R. Doc. 220 at 13, ¶ 32.
[15] *Id.* at 22, ¶ 61.

From September 8, 2010 onward, Cytogel "disengaged from" Dr. Zadina.[16] On August 22, 2012, Dr. Zadina and his colleague at Tulane Dr. Laszlo Hackler formally assigned to Tulane and the VA their ownership rights to a patent application they filed for a group of synthetic opioid compounds.[17] On May 6, 2014, the resulting patent, U.S. Patent No. 8,716,436 B2 ("the '436 Patent"), issued.[18] Cytogel alleges the compound claimed in the '436 Patent is a "modified version of Cyt-1010 and plainly designed to compete with [Cyt-1010] as a potential pharmaceutical treatment."[19]

On August 19, 2016, the United States and Tulane filed suit against Cytogel.[20] Count 1 of the Complaint is for a declaratory judgment of ownership of the '436 Patent, and Count 2 of the Complaint is for a declaratory judgment of inventorship of the '436 Patent.[21] On September 7, 2016, Cytogel filed thirteen counterclaims against Plaintiffs Tulane and the United States, joining Dr. Zadina as Counterclaim-Defendant.[22] On July 23, 2018, Cytogel filed its Second Amended and Restated Counterclaims, which included a fourteenth counterclaim.[23]

Plaintiffs filed the instant Motion for Partial Summary Judgment on Count 1 of the Complaint on September 10, 2018.[24] They argue that, as a matter of law, the Consulting Agreement does not assign the '436 Patent to Cytogel.[25] They also assert the invention of the '436 Patent predates the Consulting Agreement.[26] Cytogel opposes.[27]

---

[16] R. Doc. 233-1 at 9, ¶ 19; R. Doc. 285 at 7, ¶ 19.
[17] R. Doc. 1 at 12, ¶ 47; R. Doc. 220 at 20, ¶ 55.
[18] R. Doc. 233-1 at 9, ¶ 20; R. Doc. 285 at 7, ¶ 20.
[19] R. Doc. 220 at 23, ¶ 64.
[20] R. Doc. 1.
[21] *Id.* On September 20, 2018, the Court dismissed without prejudice the portions of Count 2 regarding pending patent applications and ordered a separate trial for Count 2 of the Complaint and Count 14 of Cytogel's Second Amended and Restated Counterclaims. R. Doc. 298.
[22] R. Doc. 6.
[23] R. Doc. 220.
[24] R. Doc. 270.
[25] R. Doc. 270-3 at 4–7.
[26] *Id.* at 7–8.
[27] R. Doc. 307.

Cytogel filed the instant Motion for Partial Summary Judgment on the Consulting Agreement on September 10, 2018.[28] This motion is effectively a cross-motion to Plaintiffs' motion. Cytogel argues that, as a matter of law, the Consulting Agreement automatically assigns the '436 Patent to Cytogel.[29] The Tulane, Dr. Zadina, and the United States oppose.[30]

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[31] "An issue is material if its resolution could affect the outcome of the action."[32] When assessing whether a material factual dispute exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."[33] All reasonable inferences are drawn in favor of the non-moving party.[34] There is no genuine issue of material fact if, even viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party, thus entitling the moving party to judgment as a matter of law.[35]

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." To satisfy Rule 56's burden of production, the moving party must do one of two things:

---

[28] R. Doc. 276.
[29] R. Doc. 276-1 at 3–8.
[30] R. Doc. 319 (United States' opposition); R. Doc. 325 (Tulane and Dr. Zadina's opposition).
[31] FED. R. CIV. P. 56; *see also Celotex*, 477 U.S. at 322–23.
[32] *DIRECTV, Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005).
[33] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000).
[34] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).
[35] *Hibernia Nat. Bank v. Carner*, 997 F.2d 94, 98 (5th Cir. 1993) (citing *Amoco Prod. Co. v. Horwell Energy, Inc.*, 969 F.2d 146, 147–48 (5th Cir. 1992)).

"the moving party may submit affirmative evidence that negates an essential element of the nonmoving party's claim" or "the moving party may demonstrate to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." If the moving party fails to carry this burden, the motion must be denied. If the moving party successfully carries this burden, the burden of production then shifts to the non-moving party to direct the Court's attention to something in the pleadings or other evidence in the record setting forth specific facts sufficient to establish that a genuine issue of material fact does indeed exist.[36]

If the dispositive issue is one on which the non-moving party will bear the burden of persuasion at trial, the moving party may satisfy its burden of production by either (1) submitting affirmative evidence that negates an essential element of the non-movant's claim, or (2) affirmatively demonstrating that there is no evidence in the record to establish an essential element of the non-movant's claim.[37] If the movant fails to affirmatively show the absence of evidence in the record, its motion for summary judgment must be denied.[38] Thus, the non-moving party may defeat a motion for summary judgment by "calling the Court's attention to supporting evidence already in the record that was overlooked or ignored by the moving party."[39] "[U]nsubstantiated assertions are not competent summary judgment evidence. The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim. 'Rule 56 does not impose

---

[36] *Celotex*, 477 U.S. at 322–24.
[37] *Id.* at 331–32 (Brennan, J., dissenting).
[38] *See id.* at 332.
[39] *Id.* at 332–33. The burden would then shift back to the movant to demonstrate the inadequacy of the evidence relied upon by the non-movant. Once attacked, "the burden of production shifts to the nonmoving party, who must either (1) rehabilitate the evidence attacked in the moving party's papers, (2) produce additional evidence showing the existence of a genuine issue for trial as provided in Rule 56(e), or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f)." *Id.* at 332–33, 333 n.3.

5

upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'"[40]

## **LAW AND ANALYSIS**

I. **Genuine issues of material fact exist regarding Dr. Zadina and Cytogel's intent as to the intellectual property provision of the Consulting Agreement.**

The content of the Consulting Agreement is undisputed. The Consulting Agreement states Dr. Zadina "acknowledges that any inventions, processes, methods, techniques, formulae, compounds, designs, improvements, writings, tradenames, trademarks, copyrights, patents, trade secrets and other intellectual properties that may result or emerge from materials or information provided by Cytogel, its employees or other consultants, or on the premises of Cytogel, or as a result of the consulting process, shall remain the sole and exclusive property of and for the benefit of Cytogel."[41] Plaintiffs argue that, because the contract uses the word "remain," the contract does not transfer intellectual property from Dr. Zadina to Cytogel.[42]

The parties dispute their intent when agreeing to the intellectual property provision of the Consulting Agreement. Cytogel alleges both it and Dr. Zadina intended the provision to be "an intellectual property transfer provision."[43] Plaintiffs state it was "intended to be an 'intellectual property provision,' . . . [and does not] indicate[] that it would effectuate transfer or assignment of intellectual property rights."[44]

"Although state law governs the interpretation of contracts generally, the question of whether a patent assignment clause creates an automatic assignment or merely an

---
[40] *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Celotex*, 477 U.S. at 324; *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) and quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n.7 (5th Cir. 1992)).
[41] *Id.* at 3–4, ¶ 7–8.
[42] R. Doc. 75-1 at 20.
[43] R. Doc. 307-1 at 8, ¶ 10.
[44] R. Doc. 357-1 at 11–12, ¶ 10.

6

obligation to assign is . . . a matter of federal law."[45] "Under federal law, contract interpretation 'dovetails precisely with general principles of contract law,' and 'under both bodies of law, the judicial task in construing a contract is to give effect to the mutual intentions of the parties.'"[46]

Whether the assignment is automatic "depends on the contractual language."[47] A contract that "expressly grants rights in future inventions" transfers legal title automatically, while a contract that "obligate[s] the inventor to grant rights in the future, by contrast, 'may vest the promisee with equitable rights in those inventions once made,' but do not by themselves 'vest legal title to patents on the inventions in the promisee.'"[48]

Courts have held contracts to constitute automatic assignments when they provide an inventor "agrees to grant and does hereby grant"[49] patent rights or "hereby conveys, transfers, and assigns"[50] patent rights. Courts have held contracts to be agreements to assign when they provide "all rights ... will be assigned by"[51] an inventor or provide an inventor "agree[s] to assign"[52] patent rights. An agreement to assign does not constitute a transfer of legal title, but "may vest the promisee with *equitable* rights in those inventions once made."[53]

---

[45] *DDB Techs., L.L.C. v. MLB Advanced Media, L.P.*, 517 F.3d 1284, 1290 (Fed. Cir. 2008) (citing *Speedplay, Inc. v. Bebop, Inc.*, 211 F.3d 1245, 1253 (Fed.Cir.2000); *Arachnid, Inc. v. Merit Indus., Inc.*, 939 F.2d 1574, 1580–81 (Fed.Cir.1991)).
[46] *Hanak v. Talon Ins. Agency, Ltd.*, 470 F. Supp. 2d 695, 706 (E.D. Tex. 2006) (citing *NRM Corp. v. Hercules, Inc.*, 758 F.2d 676, 681 (D.C.Cir.1985); *Bridas S.A.P.I. C. v. Government of Turkmenistan*, 345 F.3d 347, 355 (5th Cir.2003), *cert. denied*, 541 U.S. 937 (2004)); *cf. Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 31–32, 125 S. Ct. 385, 397, 160 L. Ed. 2d 283 (2004) (holding federal contract interpretation requires contracts be interpreted "by their terms and consistent with the intent of the parties").
[47] *Id.*
[48] *Id.* (citing *Arachnid*, 939 F.2d at 1581).
[49] *Filmtec Corp. v. Allied-Signal Inc.*, 939 F.2d 1568, 1573 (Fed. Cir. 1991).
[50] *Speedplay*, 211 F.3d at 1253.
[51] *Arachnid*, 939 F.2d at 1581.
[52] *Bd. of Trustees of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*, 583 F.3d 832, 842 (Fed. Cir. 2009), *aff'd*, 563 U.S. 776, 131 S. Ct. 2188, 180 L. Ed. 2d 1 (2011).
[53] *Arachnid*, 939 F.2d at 1581 (emphasis in original).

The Consulting Agreement in this case provides the "patents . . . that may result or emerge from materials or information provided by Cytogel . . . *shall remain* the sole and exclusive property of and for the benefit of Cytogel."[54] Cytogel cites *Polyzen, Inc. v. Radiadyne, LLC*,[55] which is the only case of which the Court is aware interpreting whether a contract providing a patent "will remain" or "shall remain" the property of an employer constitutes an automatic assignment or an agreement to assign. In *Polyzen*, a district court stated that "'will remain' arguably falls into a grey zone between the strong operative language of 'does hereby grant,' which unambiguously creates a present interest, and the future-focused language of 'will be assigned,' which creates only an equitable interest and not legal title."[56] The court concluded the contract "create[d] a present legal interest in [the employer] in an exclusive license [because] "[w]ill remain" suggests that the [invention] always has been and continues to be the property of [the employer]; there was no additional right that needed to be assigned when the . . . patent application was filed and when the . . . patent issued."[57]

Plaintiffs and Defendant dispute the intent of the parties to the Consulting Agreement. The parties disagree on whether the provision was meant to be an automatic intellectual property transfer provision or to create only an equitable interest, not legal title, in intellectual property resulting or emerging from Dr. Zadina's work for Cytogel.[58] Interpreting the contract under general principles of contract law, the Court finds the Consulting Agreement's intellectual property provision ambiguous. "Intent is an issue of

---

[54] *Id.* at 3–4, ¶ 7–8.
[55] No. 5:11-CV-662-D, 2016 WL 5360576 (E.D.N.C. Sept. 23, 2016), *appeal dismissed*, No. 2017-1174, 2016 WL 10567947 (Fed. Cir. Dec. 20, 2016), *and aff'd*, 726 F. App'x 819 (Fed. Cir. 2018).
[56] *Id.* at *7.
[57] *Id.*
[58] R. Doc. 307-1 at 8, ¶ 10; R. Doc. 357-1 at 11–12, ¶ 10.

fact which is to be inferred from all of the surrounding circumstances."[59] There are genuine issues of material fact as to Cytogel and Dr. Zadina's intent with respect to the intellectual property provision of the Consulting Agreement. As a result, the Court denies both parties' motions for summary judgment.

## II. Genuine issues of material fact exist regarding the date of invention of the '436 Patent.

The facts regarding the date of invention of the '436 Patent are disputed. Plaintiffs argue that, because the invention of the '436 Patent predates the Consulting Agreement, the Consulting Agreement cannot, as a matter of law, assign the '436 Patent to Cytogel.[60] Cytogel's Second Amended and Restated Counterclaims are replete with factual allegations that Dr. Zadina relied on information he learned from Cytogel after the Consulting Agreement became effective on November 1, 2006 to develop the '436 Patent.[61] Plaintiffs present a portion of the testimony of Dr. Stephen Davies, who testified that the date of invention of the '436 Patent was in 2005, based on information in his expert report.[62] Cytogel admits Dr. Davies testified the date of invention was in 2005, but argue Dr. Davies merely based this on Dr. Zadina's testimony, which is contradicted by other evidence.[63] Cytogel alleges the first time Dr. Zadina "estimated that he invented the '436 compounds in 2005 or 2006" was at his deposition in 2018.[64] Plaintiffs dispute this fact.[65] Because genuine issues of material fact as to the date of invention of the '436 Patent exist, Plaintiffs are not entitled to judgment as a matter of law.

---

[59] *Fleniken v. Entergy Corp.*, 790 So. 2d 64, 73 (La. App. 1 Cir. 2/16/01), *writ denied*, 793 So. 2d 1250 (La. 6/15/01), and *writ denied*, 793 So. 2d 1252 (La. 6/15/01).
[60] R. Doc. 270-3 at 7–8.
[61] R. Doc. 220 at 13–26, ¶ 32–71.
[62] R. Doc. 270-4 at 4, ¶ 13.
[63] R. Doc. 307-1 at 6, ¶ 13.
[64] *Id.* at 9, ¶ 18.
[65] R. Doc. 357-1 at 15, ¶ 18.

## CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that the Motion for Partial Summary Judgment on Count 1 of the Complaint, filed by Plaintiffs the Administrators of the Tulane Educational Fund and the United States of America, be and hereby is **DENIED**.[66]

**IT IS FURTHER ORDERED** that the Motion for Partial Summary Judgment on the Consulting Agreement, filed by Defendant Cytogel Pharma, LLC, be and hereby is **DENIED**.[67]

**IT IS FURTHER ORDERED** that the Contingent Motion for Judgment as a Matter of Law on Counts 1 and 2 of the Complaint and Counts 1 and 14 of Cytogel Pharma, LLC's Second Amended and Restated Counterclaims, filed by Plaintiffs the Administrators of the Tulane Educational Fund and the United States of America and Counterclaim-Defendant Dr. James E. Zadina, be and hereby is **DENIED** as to Count 1 of the Complaint and Count 1 of Defendant's Second Amended and Restated Counterclaims and **DENIED WITHOUT PREJUDICE** as to Count 2 of the Complaint and Count 14 of Defendant's Second Amended and Restated Counterclaims.[68]

**New Orleans, Louisiana, this 29th day of October, 2018.**

*/s/ Susie Morgan*
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[66] R. Doc. 270.
[67] R. Doc. 276.
[68] R. Doc. 273.